UNITED STATES, Appellant

v.

David A. HUDSON, Fireman Apprentice
U.S. Coast Guard, Appellee

No. 03-5005

Crim. App. No. 1159

United States Court of Appeals for the Armed Forces

Argued December 9, 2003

Decided March 30, 2004


CRAWFORD, C.J., delivered the opinion of the Court, in which GIERKE, EFFRON, BAKER, and ERDMANN, JJ., joined.


<u>Counsel</u>

For Appellant: Lieutenant Commander <u>John S. Luce, Jr.</u> (argued).

For Appellee: Lieutenant Commander <u>Mike Cunningham</u> (argued).

Military Judge: Mark R. Higgins


<u>**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION**</u>.

Chief Judge CRAWFORD delivered the opinion of the Court.

Pursuant to his pleas, Appellee was convicted on July 26, 2001, by a special court-martial consisting of a military judge alone, of wrongful use and possession of a controlled substance (OxyContin), unauthorized absence, failure to obey a lawful order and regulation, wrongful appropriation, and breaking restriction, in violation of Articles 112a, 86, 92, 121, and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 912a, 886, 892, 921, and 934 (2000), respectively. The military judge sentenced Appellee to confinement for six months, reduction to pay grade E-1, and a bad conduct discharge. Pursuant to Appellee's pretrial agreement, the convening authority approved the sentence as adjudged, but suspended execution of confinement in excess of five months.

On appeal to the Coast Guard Court of Criminal Appeals, Appellee raised three assignments of error:

1. The specification of possession of OxyContin should be dismissed as a lesser included offense of use of OxyContin;

2. The specification of unauthorized absence should be dismissed as a lesser included offense of breaking restriction; and

3. A bad conduct discharge is inappropriately severe for a junior enlisted member who self-referred for addiction to OxyContin when the OxyContin was initially prescribed by a Coast Guard contract physician.

The court affirmed on the first and third assignments of error, but held that it was plain error not to dismiss the unauthorized absence specification as a lesser-included offense of the breaking restriction specification. United States v. Hudson, 58 M.J. 830, 831 (C.G. Ct. Crim. App. 2003). The court set aside the finding of guilty for the unauthorized absence offense, reassessed the sentence in light of the dismissed charge, and found that the sentence would have been the same if the offense had been dismissed at trial. Id. at 833.

On July 28, 2003, the Judge Advocate General of the Coast Guard certified the case for review by this Court to consider the following issue:

> WHETHER THE COAST GUARD COURT OF CRIMINAL APPEALS ERRED IN DECIDING THAT IT WAS PLAIN ERROR NOT TO DISMISS A TWO DAY UNAUTHORIZED ABSENCE AS A LESSER INCLUDED OFFENSE OF BREAKING RESTRICTION?

For the reasons set forth below, we answer the certified issue in the affirmative, and reverse the decision of the lower court.

## FACTS

Appellee was originally stationed in Morgan City, Louisiana, where in March 2000 a Coast Guard civilian physician prescribed for him the drug OxyContin. In September 2000, Appellee was transferred to Integrated Support Command New Orleans (ISCNO), where he illegally obtained and continued to use OxyContin after his initial prescription expired. Appellee

3

eventually sought treatment for his addiction, and was placed in an inpatient treatment program at Methodist Hospital in New Orleans. After completing the inpatient program, Appellee entered into a daily outpatient rehabilitation program. Appellee missed several meetings that were required as part of the outpatient program.

Having learned that Appellee had failed some requirements of his outpatient treatment program, the chief of the Personnel Division at ISCNO, Lieutenant Commander (LCDR) John Bowers, cancelled Appellee's leave, ordered him restricted to the limits of ISCNO, and required him to report for restricted muster. LCDR Bowers imposed the restriction to ensure Appellee's presence at trial for illegal possession and use of OxyContin.

While under restriction, Appellee requested a urinalysis to show that he was not using OxyContin. Appellee failed to report for the urinalysis, and instead took a command vehicle and drove off the base. A New Orleans police officer stopped Appellee the next day for driving erratically, and arrested him upon noticing that the vehicle was reported stolen.

## DISCUSSION

The Fifth Amendment protection against double jeopardy provides that an accused cannot be convicted of both an offense and a lesser-included offense. See Article 44(a), UCMJ, 10 U.S.C. § 844(a) (2000); Blockburger v. United States, 284 U.S.

299 (1932); United States v. Teters, 37 M.J. 370 (C.M.A. 1993).

Charges reflecting both an offense and a lesser-included offense

are impermissibly multiplicious.  See Brown v. Ohio, 432 U.S.

161, 165-66 (1977)(noting that offenses charged are

multiplicious when they stand in the relationship of greater and

lesser offenses).  On these grounds, "a specification may be

dismissed upon timely motion by the accused."  Rule for Courts-

Martial 907(b)(3)(B) [hereinafter R.C.M.].

Absent a timely motion, an unconditional guilty plea, such

as Appellee's, waives a multiplicity claim absent plain error.

United States v. Heryford, 52 M.J. 265, 266 (2000).  "Appellant

may show plain error and overcome [waiver] by showing that the

specifications are facially duplicative," United States v.

Barner, 56 M.J. 131, 137 (C.A.A.F. 2001), "that is, factually

the same," United States v. Lloyd, 46 M.J. 19, 23 (C.A.A.F.

1997).  The test to determine whether an offense is factually

the same as another offense, and therefore lesser-included to

that offense, is the "elements" test.  United States v. Foster,

40 M.J. 140, 142 (C.M.A. 1994).  Under this test, the court

considers "whether each provision requires proof of a fact which

the other does not."  Blockburger, 284 U.S. at 304.  Rather than

adopting a literal application of the elements test, this Court

stated that resolution of lesser-included claims "can only be

resolved by lining up elements realistically and determining

5

whether each element of the supposed 'lesser' offense is rationally derivative of one or more elements of the other offense – and vice versa." Foster, 40 M.J. at 146. Whether an offense is a lesser-included offense is a matter of law that this Court will consider de novo. United States v. Palagar, 56 M.J. 294, 296 (C.A.A.F. 2002).

To determine whether the offenses are factually the same, we review the "factual conduct alleged in each specification," United States v. Harwood, 46 M.J. 26, 28 (C.A.A.F. 1997), as well as the providence inquiry conducted by the military judge at trial, Lloyd, 46 M.J. at 23. The specification for Appellee's unauthorized absence read as follows:

> In that [Appellee] . . . did, at or near New Orleans, Louisiana, on or about 11 May 2001, without authority, absent himself from his unit to wit: Coast Guard Integrated Support Command New Orleans, and did remain so absent until . . . on or about 12 May 2001.

During the providence inquiry, the military judge described the elements of this offense as follows:

> That on or about 11 May 2001 at or near New Orleans, Louisiana, you went from or remained absent from your unit, that is, Integrated Support Command New Orleans;
>
> That the absence was without proper authority from someone who could give you that leave;
>
> And that you remained absent until 12 May of 2001;
>
> And that your absence was terminated by apprehension.

(Emphasis added.)  To examine the providence of Appellee's guilty plea, the judge then elucidated the facts consistent with this charge:

> Q: On 11 May 2001 what was your assigned unit?
>
> A: Integrated Support Command New Orleans, sir.
>
> Q: How did you know that was your assigned unit?
>
> A: Because I had been told by supervisors, Chief Murray, that's where I had been stationed in New Orleans, sir.
>
> Q: On 11 May 2001 were you at your unit at any time?
>
> . . . .
>
> A: Yes, sir.
>
> Q: Did you leave while you were still supposed to be there?
>
> A: Yes, sir.
>
> Q: Did anyone who was authorized to give you leave authorize your absence?
>
> A: No, sir.
>
> Q: Did you believe at the time you departed that you had the authority to be absent?
>
> A: No, sir.
>
> Q: Did you remain absent until 12 May 2001?
>
> A: Yes, sir.

(Emphasis added.)  Appellee had previously stipulated to the facts of his unauthorized absence as follows: "[Appellee's]

absence began on 11 May 2001 when he failed to report [to] an 1100 urinalysis at the Integrated Support Command.  Instead, [Appellee] took a command vehicle without permission and drove off the base."

The specification for Appellee's offense of breaking restriction read as follows:

> In that [Appellee] . . . having been restricted to the limits of the Integrated Support Command New Orleans, by a person authorized to do so, did, at or near New Orleans, Louisiana, on or about 11 May 2001, break said restriction.

(Emphasis added.)  Following the providence inquiry into Appellee's guilty plea for unauthorized absence, the military judge outlined for Appellee the elements of breaking restriction:

> That a certain person ordered you to be restricted to the limits of Integrated Support Command New Orleans;
>
> That said person was authorized to order this restriction;
>
> That you knew of the restriction and the limits thereof;
>
> That on or about 11 May 2001 you went beyond the limits of the restriction[] before you had been set free by proper authority; and
>
> That under the circumstances your conduct[] was to the prejudice of good order and discipline in the armed forces or of a nature to bring discredit upon the armed forces.

(Emphasis added.)  The judge then gleaned from Appellee the facts consistent with this charge:

> Q: Did a certain authority on 11 May 2001 appoint a certain place of duty?
>
> A: Yes, sir.
>
> Q: Did you know what that place was?
>
> A: Yes, sir.
>
> Q: What was that place of duty?
>
> A: ISC New Orleans, sir.
>
> Q: And so, you were in a <u>restricted status</u> at that time?
>
> A: Yes, sir.
>
> Q: Did you believe that <u>placing you in a restricted status</u> was directly connected with maintaining good order and discipline in ISC New Orleans?
>
> A: Yes, sir.
>
> Q: Do you believe that <u>his order</u> was lawful?
>
> A: Yes, sir.
>
> Q: How long were you to be restricted?
>
> A: There was no cap put on it, sir.  I was thinking that probably until I went to trial, sir.
>
> Q: So your understanding was that you would be restricted until you went to trial?
>
> A: That's what I was thinking, sir.  I wasn't told.  Basically I was told I was going to take a urinalysis.  And the results probably wouldn't be back for a number of weeks or something.  I was never -- I was never told.  I was just told I was <u>back on restriction</u>.

. . . .

Q: Do you believe that you were being restricted so that you would be present for trial and wouldn't commit further drug abuse, or were you being restricted as punishment for missing the meetings? Which do you believe?

A: So I would be present at trial, sir.

Q: So it's your understanding that you were restricted so that your presence at trial would be guaranteed, and that was acceptable under the law?

A: Yes, sir.

(Emphasis added.) Appellee had previously stipulated regarding this offense:

> As a result [of failing in his drug and alcohol rehabilitation program], LCDR Bowers canceled [Appellee's] leave and reinstated a previous order to pre-trial restriction. . . . The pre-trial restriction order was lawful. [Appellee] was restricted to the limits of the Integrated Support Command New Orleans and was required to report for restricted muster.

(Emphasis added.)

On the face of this record, particularly the emphasized language above, it is clear that Appellee's offenses of breaking restriction and unauthorized absence were factually distinguishable in two respects. First, Appellee's offense of breaking restriction required that Appellee had been ordered to restriction in some specific manner by an authorized individual. In this case, the imposed restriction required Appellee's indefinite presence at ISCNO, in a status of restricted muster.

10

By contrast, Appellee's unauthorized absence offense did <u>not</u> require proof of a specific restriction order. Instead, it required Appellee's admission that he departed his assigned unit without authority for a two day period. There was a distinct, independent obligation to be present for duty at the unit regardless of the terms of his restriction order.

Moreover, Appellee's offense of unauthorized absence contained a temporal component which was not present in the breaking restriction offense. Appellee's breaking restriction offense required proof that Appellee departed his unit at a single point in time on May 11. By contrast, Appellee's unauthorized absence offense required proof that Appellee remained absent from his unit for a specified two-day period of time, spanning May 11 and May 12. In fact, returning to Appellee's unit on May 12, thereby terminating the unauthorized absence offense, was an element that was both noted in the unauthorized absence specification and discussed in the corresponding providence inquiry.

Given these distinctions, Appellee's offenses of breaking restriction and unauthorized absence were not factually the same. Accordingly, it was <u>not</u> plain error <u>not</u> to dismiss Appellee's two-day unauthorized absence as a lesser-included offense of breaking restriction.

## DECISION

The decision of the United States Coast Guard Court of Criminal Appeals is reversed.