# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
HAIGHT, PENLAND, and ALMANZA[1]
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class ZACHARY TORO III**
**United States Army, Appellant**

ARMY 20130441

Headquarters, Fort Carson
Timothy Grammel, Military Judge
Colonel John S.T. Irgens, Staff Judge Advocate (pretrial)
Lieutenant Colonel Stephanie D. Sanderson, Staff Judge Advocate (post-trial)

For Appellant: Lieutenant Colonel Charles D. Lozano, JA; Major Amy E. Nieman, JA; Captain Payum Doroodian, JA (on brief).

For Appellee: Major A.G. Courie III, JA; Major John K. Choike, JA; Captain Jihan Walker, JA (on brief).

23 October 2015

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

ALMANZA, Judge:

A military judge sitting as a general court-martial convicted appellant, consistent with his pleas, of two specifications of rape, four specifications of aggravated sexual contact, two specifications of forcible sodomy, one specification of aggravated assault, and three specifications of assault consummated by a battery, in violation of Articles 120, 125, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 925, and 928 (2006 & Supp. V) [hereinafter UCMJ]. The military judge sentenced appellant to a dishonorable discharge, confinement for nine years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved only so much of the adjudged sentence as provided for

---

[1] Judge ALMANZA took final action in this case while on active duty.

a dishonorable discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to the grade of E-1.

This case is before us pursuant to Article 66, UCMJ. Appellant raises five assignments of error, two of which merit discussion, and one of which merits relief. Appellant also raises three matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), none of which merits discussion or relief.

## BACKGROUND

In the early morning hours of 27 February 2012, appellant raped JF, a woman he had met the previous evening at a bar in Colorado Springs, in his barracks room. Appellant stated that he first had consensual sex with JF, but that once she had dressed and was ready to leave, he grabbed her upper left arm with both hands and pulled her towards him, causing her to fall on her back on his bed.[2] He then pinned her down, pulled her shirt and bra down, and licked JF's breasts while she was trying to get away.[3]

Appellant then pulled down JF's pants and digitally penetrated her genital opening while he was holding her down with one arm wrapped around her leg. JF was still trying to get away and was saying, "no" and "stop."[4] During this time (appellant did not recall the exact order of events), appellant also digitally penetrated JF's anus,[5] licked her vulva,[6] spat on her genitals,[7] and licked her anus.[8]

---

[2] This assault consummated by a battery is the basis for Specification 2 of Charge III.

[3] This aggravated sexual contact is the basis for Specification 6 of Charge I.

[4] This rape is the basis for Specification 2 of Charge I.

[5] This aggravated sexual contact is the basis for Specification 4 of Charge I.

[6] This aggravated sexual contact is the basis for Specification 3 of Charge I.

[7] This assault consummated by a battery is the basis for Specification 4 of Charge III.

[8] This aggravated sexual contact is the basis for Specification 5 of Charge I.

Appellant then turned JF over, penetrated her vagina with his penis from behind[9] and grabbed her hair from behind with his hand, pulling her head back.[10] Appellant then penetrated JF's anus with his penis, while she continued to say "no" and was trying to get away (he was holding her hips so she could not get away).[11]

Appellant then turned JF over again, penetrated her vagina with his penis while she was on her back,[12] and then used one hand to choke JF on her neck for ten to thirty seconds[13] while he continued to penetrate her vagina with his penis. Appellant then told JF he wanted her on top, and rolled over, holding JF tightly across her upper torso while she was saying "stop" and trying to get away.[14]  Finally, when JF was laying on her side facing away from appellant, he went to her side of the bed, put his penis in front of her face, and his hand on the back of her head.  JF tried to move away from appellant's penis, at which point he told her to put his penis in her mouth.  She did so, and when she started to pull away he put his hand on her head and forced her to put more of his penis in her mouth.[15]

In his offer to plead guilty, appellant offered to "waive all waivable motions, with the exception of a motion for continuance," and further stated his belief that there was a factual basis for a motion alleging unreasonable multiplication of charges for sentencing purposes.  At trial, the military judge covered in detail the relief appellant could obtain if a motion for unreasonable multiplication of charges for sentencing purposes were granted.  The military judge also confirmed that appellant wanted to give up this motion, among others, to get the benefit of his pretrial agreement.

---

[9] This penetration, which appellant described in his providence inquiry, is not separately charged.

[10] This assault consummated by a battery is the basis for Specification 3 of Charge III.

[11] This forcible sodomy is the basis for Specification 1 of Charge II.

[12] This rape is the basis for Specification 1 of Charge I.

[13] This aggravated assault is the basis for Specification 1 of Charge III.

[14] As appellant described in the providence inquiry, he continued to penetrate JF's vagina with his penis while he rolled over, forcing JF on top of him.  Accordingly, this rape is the same as that described in the text accompanying footnote 11 above.

[15] This forcible sodomy is the basis for Specification 2 of Charge II.

**LAW AND ANALYSIS**

*1. Multiplicity*

"[A]ppellate consideration of multiplicity claims is effectively waived by unconditional guilty pleas, except where the record shows that the challenged offenses are 'facially duplicative.'" *United States v. Lloyd*, 46 M.J. 19, 20 (C.A.A.F. 1997); *see also United States v. Pauling*, 60 M.J. 91, 94 (C.A.A.F. 2004); *United States v. St. John*, 72 M.J. 685, 687 (Army Ct. Crim. App. 2013). Our court and our superior court have interpreted this "waiver" to mean that, in the absence of an affirmative waiver, an unconditional guilty plea "forfeits" consideration of multiplicity issues on appeal absent plain error. *St. John*, 72 M.J. at 687 n.1; *see also Gladue*, 67 M.J. at 314. An appellant may demonstrate plain error by showing the offenses are "facially duplicative," in other words, that the factual components of the charged offenses are the same. *St. John*, 72 M.J. at 687 and 687 n.1 (citing *Lloyd*, 46 M.J. at 23). "Two offenses are not facially duplicative if each 'requires proof of a fact which the other does not.'" *Pauling*, 60 M.J. at 94 (quoting *United States v. Hudson*, 59 M.J. 357, 359 (C.A.A.F. 2004)). Even if the language of two specifications is identical, those specifications are not multiplicious if they allege separate crimes. *United States v. Smith*, ARMY 20110418, 2013 CCA LEXIS 586 at *11 (Army Ct. Crim. App. 30 July 2013) (unpub.) (two rape specifications with identical language not multiplicious because "[a]ppellant, on the same date, at the same place, and using the same type of force, twice raped [the victim]").

In one of his assignments of error, appellant argues that Specification 1 of Charge III (choking JF on her neck with his hand), Specification 2 of Charge III (pulling JF on the bed), and Specification 3 of Charge III (pulling JF's hair) are multiplicious with the elements of force in Specification 1 of Charge I (penetrating JF's vulva with his penis) and Specification 6 of Charge I (licking JF's breasts). We disagree, because a review of the specifications and the facts in the record demonstrates that the acts constituting the force elements of the crimes alleged in Specifications 1 and 6 of Charge I are different than the assaults charged in Specifications 1, 2, and 3 of Charge III.

Specifically, the assault charged in Specification 1 of Charge III (choking JF on the neck with his hand) was different than the force used in Specification 1 of Charge I (penetrating JF's vulva with his penis). Appellant testified that the force used to commit the rape was holding JF tight across her upper torso while she was on top of him: "[appellant] used force to compel her submission by using physical violence and strength by bear hugging her around her upper torso." While we recognize that the record reflects that the rape charged in Specification 1 of Charge I began while JF was on her back, and during the time appellant choked JF, appellant continued to penetrate JF's vulva with his penis when he flipped her over and used the force described above – holding her tight across her upper torso – to force her to

4

compel her submission. As the record does not indicate that the choking charged in Specification 1 of Charge III was the force used to commit the rape charged in Specification 1 of Charge I, we decline to find the offenses are multiplicious.

The record also shows that the choking charged in Specification 1 of Charge III occurred after the aggravated sexual contact charged in Specification 6 of Charge I (licking JF's breasts). Accordingly, we find that these two offenses are not multiplicious.

Similarly, the assault charged in Specification 2 of Charge III (pulling JF onto the bed) was not the force used to commit either the rape charged in Specification 1 of Charge I (penetrating JF's vulva with his penis) or the aggravated sexual contact charged in Specification 6 of Charge I (licking JF's breasts). As appellant testified, the force he used to commit the rape was "bear hugging her around her upper torso," and the force he used to commit the aggravated sexual contact was also different than the act of pulling her to the bed: "[a]fter . . . [JF] landed on the bed . . . [appellant] straddled her waist using . . . [his] body weight to pin her down. She was unable to move or escape. . . . [Appellant] . . . used . . . [his] weight and . . . [his] hands to pin her . . . to the bed." We thus find that Specification 2 of Charge III is not multiplicious with Specifications 1 or 6 of Charge I.

The assault charged in Specification 3 of Charge III (pulling JF's hair with his hand) occurred when appellant was penetrating her vagina with his penis, a penetration that was not separately charged. *See* footnotes 9-10 above and accompanying text. As a result, this assault was not the force used to commit the rape charged in Specification 1 of Charge I. Moreover, as the record shows this assault occurred after the aggravated sexual contact charged in Specification 6 of Charge I, this assault was not the force used to commit that aggravated sexual contact. Therefore, we find that Specification 3 of Charge III is not multiplicious with Specifications 1 or 6 of Charge I.

### 2. *Dilatory Post-Trial Processing*

In another assignment of error, appellant seeks relief for dilatory post-trial processing. In *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006), our superior court established timeliness standards for various stages of the post-trial and appellate process. *Id.* at 136-43. The *Moreno* standard applicable in this case is that a convening authority should take action within 120 days after the trial is completed. *Id.* at 142.[16] Failure to satisfy any of these standards creates a "presumption of unreasonable delay," prompting this court to apply and balance the four factors set

---

[16] *Moreno's* second and third timeliness standards, which apply to docketing a case with this court after action is taken and appellate review before this court, are not relevant in this case. *Moreno*, 63 M.J. at 142.

out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), in order to determine whether appellant's due process rights were violated by the delays in processing. *See Moreno,* 63 M.J. at 135-36, 142.

Here, taking 301 days to process appellant's case from trial completion to action is presumptively unreasonable. In the face of this lengthy delay, we now apply and balance the four factors set out in *Barker. Id.*

As to the first factor, length of delay from trial to action, it took 113 days to complete record transcription and authentication for a 176-page record and an additional 16 days for the staff judge advocate (SJA) to sign the recommendation (SJAR). Appellant received copies of the record of trial and the recommendation 11 days later. The longest single delay was the 141 days it took for appellant's trial defense counsel to submit his request for clemency. Twenty days after appellant's request for clemency was submitted, the SJA signed the addendum to the SJAR and the convening authority took action. Recognizing that R.C.M. 1106(f)(5) provides defense counsel 10 days to submit clemency matters, we find that the defense is responsible for 131 days of post-trial delay.[17] Even subtracting the 131 days of defense delay from the 301 days it took to process this matter from trial to action, the delay would still be 170 days, far in excess of *Moreno's* 120-day standard.

As to the second factor, reasons for the delay, we examined the explanations offered in the government's brief and in a memorandum from the senior court reporter (Government Appellate Exhibit 1) for these delays and found them unpersuasive. *Id.* at 143; *see United States v. Arriaga*, 70 M.J. 51, 57 (C.A.A.F. 2011) ("[P]ersonnel and administrative issues . . . are not legitimate reasons justifying otherwise unreasonable post-trial delay."). This factor thus favors appellant.

---

[17] The government argues that the defense is responsible for 142 days of delay, including an additional eleven days of delay in reviewing the record of trial. The authentication page of the record of trial indicates that trial defense counsel received the record of trial on 9 August 2013 and completed his review on 14 August 2013. This is five days, not eleven. Moreover, the errata sheets indicate that they were sent to both trial counsel and to trial defense counsel on 9 August 2013. The errata sheets also indicate that trial counsel completed his review on 12 August 2013 and that trial defense counsel completed his review on 14 August 2013. On these facts, we decline to find that the time it took trial defense counsel to review the record of trial should be counted as defense delay.

The third factor does not favor appellant because he did not raise the issue of dilatory post-trial processing until this appeal.

Finally, considering the fourth factor, we find appellant has not established prejudice as a result of this delay. *Moreno*, 63 M.J. at 138-41. Appellant has alleged no prejudice and we find no prejudice after specifically reviewing each of the three sub-factors[18] identified in *Moreno*. *Id.* Nor do we find the post-trial processing was "so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Nonetheless, pursuant to Article 66(c), UCMJ, we have the authority to grant appropriate relief in cases where we have not found actual prejudice to appellant, but "unreasonable and unexplained post-trial delays" are present. *United States v. Tardif*, 57 M.J. 219, 220 (C.A.A.F. 2002); *see United States v. Ney*, 68 M.J. 613, 617 (Army Ct. Crim. App. 2010); *United States v. Collazo*, 53 M.J. 721, 727 (Army Ct. Crim. App. 2000).

In finding the 301-day delay associated with this case to be unreasonable, we recognize the government has attempted to explain the delay in transcribing and authenticating the record of trial. We also recognize that a significant portion of the delay was caused by trial defense counsel's untimely submission of appellant's clemency petition. Even considering these facts, however, we find the approximately ten-month delay still warrants relief and will grant such relief in our decretal paragraph.

## CONCLUSION

The findings of guilty of guilty are AFFIRMED.

After considering the entire record, to include the delays in post-trial processing, we AFFIRM only so much of the sentence as provides for confinement for four years and eleven months, a dishonorable discharge, forfeiture of all pay and allowances, and reduction to the grade of E-1. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings and sentence set aside by this decision are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

---

[18] (1) Oppressive incarceration pending appeal; (2) particularized anxiety and concern; and (3) impairment of ability to present a defense at rehearing. *Moreno*, 63 M.J. at 138-41.

TORO — ARMY 20130441

Senior Judge HAIGHT and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court