# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39980 (f rev)**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Robert A. MARDIS**
Airman (E-2), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 26 April 2022

———————————

*Military Judge*: Colin P. Eichenberger.

*Sentence:* Sentence adjudged 19 August 2020 by GCM convened at Mountain Home Air Force Base, Idaho. Sentence entered by military judge on 10 September 2020: Dishonorable discharge, confinement for 6 years, forfeiture of all pay and allowances, and reduction to E-1.

*For Appellant:* Major Ryan S. Crnkovich, USAF.

*For Appellee*: Lieutenant Colonel Matthew J. Neil, USAF; Major John P. Patera, USAF; Mary Ellen Payne, Esquire.

Before KEY, ANNEXSTAD, and MEGINLEY, *Appellate Military Judges*.

Judge MEGINLEY delivered the opinion of the court, in which Senior Judge KEY and Judge ANNEXSTAD joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

MEGINLEY, Judge:

Appellant's case is before our court for the second time. Initially, Appellant raised two issues on appeal: (1) whether the record of trial was substantially complete, and (2) "whether the specification alleging that Appellant committed a lewd act upon a child by intentionally exposing himself, as amended at trial, was a lesser included offense of the specification alleging sexual abuse of a child by causing sexual contact and therefore amounted to a multiplicious prosecution in violation of the double jeopardy clause of the Fifth Amendment."[1,2] Our court remanded this case to the Chief Trial Judge, Air Force Trial Judiciary, to resolve Appellant's first assignment of error, a substantial issue with the completeness of the record of trial—specifically, missing attachments to Prosecution Exhibit 1, a stipulation of fact. *United States v. Mardis*, No. ACM 39980, 2022 CCA LEXIS 10, at *9 (A.F. Ct. Crim. App. 6 Jan. 2022) (unpub. op.). We deferred deciding Appellant's second assignment of error until the record was returned to court for completion of our review under Article 66(d), UCMJ, 10 U.S.C. § 866(d). *Mardis*, unpub. op. at *9–10. On 24 January 2022, the military judge signed a certificate of correction to the record of trial, and on 1 February 2022, the record of trial was returned to the court for completion of appellate review. We find the defects in the record of trial have been corrected. This issue is now moot and we turn to Appellant's remaining assignment of error.

A general court-martial composed of a military judge sitting alone convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of one specification of sexual abuse of a child who had not attained the age of 16 years by communicating indecent language to her, one specification of sexual abuse of a child who had not attained the age of 16 years by intentionally exposing his penis to her, and one specification of sexual abuse of a child who had not attained the age of 16 years by intentionally causing her to touch his penis, all in violation of Article 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b; and one charge and one specification of possession of obscene visual depictions of minors, as assimilated under 18 U.S.C. § 1466A, in violation of Article 134, UCMJ, 10 U.S.C. § 934.[3] The military judge

---

[1] U.S. CONST. amend. V.

[2] Issue (2) is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[3] References in this opinion to Article 120b, UCMJ, 10 U.S.C. § 920b, are to the *Manual for Courts-Martial, United States* (2016 ed.). References in this opinion to Article 134, UCMJ, 10 U.S.C. § 934, are to the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*). The charges and specifications were referred to trial after 1 January 2019; accordingly, all other references to the UCMJ and Rules for Courts-Martial are

sentenced Appellant to a dishonorable discharge, confinement for six years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the sentence.

Upon further review, we find no error that materially prejudiced a substantial right of Appellant and affirm the findings and sentence.

## I. BACKGROUND

Appellant joined the Air Force in December 2016 and, at the time of his offenses, was stationed at Mountain Home Air Force Base (AFB), Idaho. As part of his plea agreement, Appellant entered into a stipulation of fact. The information provided in the stipulation of fact and in Appellant's providence inquiry form the basis for the following factual background.

On 14 April 2018, Appellant was visiting the residence of his mother, KS, who lived approximately an hour and 20 minutes away from Mountain Home AFB. At the time, MR and his five-year-old daughter, TR, were temporarily residing at KS's home.[4] At some point in the day, Appellant went into a bathroom to masturbate. While Appellant was masturbating on the toilet, TR walked into the bathroom. Appellant's penis was erect and exposed in a way that TR could see it. TR asked Appellant what he was doing. Appellant explained that he was masturbating and told TR what masturbation was. Although the exact words were unknown, according to the stipulation of fact, Appellant told TR, "[W]hen boys get hard and their penis bothers them, they have to rub it and relieve themselves by getting stuff to come out of their penis," or words to this effect. Appellant demonstrated to TR the motions associated with masturbation by rubbing his erect penis up and down one time with his hand. Appellant stated in his providence inquiry, "I found it sexually exciting explaining what masturbation was to [TR] while I was in the act of masturbating. I asked [TR] if she understood what I was talking about and she repeated what I said in her own words."

TR was about a foot away from Appellant. Appellant described what happened next:

> I reached out with my hand and touched her arm. . . . I guided
> her hand and placed it on my penis. She did not try to pull back
> . . . I moved her hand up and down on my penis one time. I felt
> sexually excited as she touched my penis, although I knew this

---

to the 2019 *MCM. See* Exec. Order 13,825, §§ 3, 5, 83 Fed. Reg. 9889, 9889–90 (8 Mar. 2018).

[4] The exact nature of the relationship between MR and KS was not fully developed at Appellant's court-martial.

was wrong and I did not want to feel that way. After I moved her hand away from my penis, I told her to ask her father any follow-up questions she may have about what masturbation is and to leave.

During the incident, TR was in the bathroom with Appellant at least for five minutes. While TR was in the bathroom, Appellant told her to keep her voice down.

On 21 April 2018, MR and TR were still at KS's residence. Appellant was again present. Much like the previous instance, at some point during the day, Appellant went to the bathroom to masturbate. While he was doing this, TR walked into the bathroom three times. While TR was in the bathroom with Appellant, MR was searching for her and calling her name, but got no response; TR had previously told MR she was going to brush her teeth. MR went to the bathroom to see if TR was there, and opened the door to see if TR was alright. When he opened the door, MR saw Appellant quickly lean forward while Appellant was sitting on the toilet with his pants down. MR believed Appellant was "using the bathroom" and did not understand why TR was in there with him.

KS was not home at the time of the incident but returned shortly thereafter. MR then told KS that it was not okay for Appellant to be using the bathroom with TR in there. TR was nearby for this conversation. In an apparent attempt to correct MR's version of events, TR stated in front of KS and MR that Appellant "was in [the bathroom] trying to get stuff out of the part that every boy has." MR found and confronted Appellant, who then admitted to MR that he had been masturbating in the bathroom while TR was also in the bathroom. MR went after Appellant and had to be physically restrained and pulled off Appellant by other people in the house. Appellant immediately left the home. At approximately 1737 hours, MR called 911 to report the incident.

On 31 May 2018, TR was interviewed by Children at Risk Evaluation Services at a local hospital in Idaho. In her interview, she stated that she was "helping [Appellant] get stuff out of his chucker," and that "he really liked me that time." TR stated, "I wanted to (help him) and he let me." She also stated Appellant's penis felt like "skin" and when she moved her hand on his "chucker," it felt weird.

Also on 31 May 2018, Appellant was interviewed by local police and by agents with the Air Force Office of Special Investigations (AFOSI). During his interview with AFOSI, Appellant consented to a search of his electronic devices in his dorm room. Agents seized over 100 items. During the search, agents also found a pink pair of children's underwear; it was later determined the underwear belonged to TR. DNA testing reported that a DNA mixture found in the

crotch area of the underwear was "14 trillion times more like to have come from [Appellant] and [TR] than if it originated from [Appellant and] an unknown individual."

The search of Appellant's electronic devices yielded 14,618 images and 330 videos of animated or computer-generated imagery (CGI) depictions of minors engaged in sexually explicit conduct. Some of the images, GIFs,[5] and videos depicted babies and toddlers in apparent pain and confusion, wherein the child is asking for the other party to stop. Other files depicted adults educating the animated or CGI minor about how to perform a sexual act. However, no images, GIFs, or videos of child pornography depicting an actual minor were found on Appellant's devices.

In February 2020, Appellant's dormitory building was selected for a random inspection. After the inspecting official searched Appellant's room and found illustrations of "possibly sexually under-developed [females] or minors, engaging in sexual acts," the Government obtained a search authorization for Appellant's electronic devices in his room. The search of these electronic devices yielded an additional 10,313 images, GIFs, and videos depicting what appeared to be animated or computer-generated images of minors engaged in sexually explicit conduct. These images and videos were less "cartoonish" in nature and more realistic than those found on Appellant's seized devices in 2018. Approximately 4,127 images, GIFs, and videos depicting animated or CGI images were downloaded on 8 February 2020.

## II. DISCUSSION

### A. Additional Background

Specification 2 of Charge I alleged that on divers occasions, between 14 April 2018 and 21 April 2018, Appellant committed a lewd act upon TR, by exposing his penis to her, with an intent to arouse or gratify his sexual desires. After hearing Appellant's providence inquiry on this specification, the military judge advised trial and defense counsel he would not be able to find Appellant's plea to be provident with regard to the 21 April 2018 exposure. After some discussion between trial and defense counsel, the words "on divers occasions" were stricken by trial counsel with the convening authority's approval, and Appellant pleaded guilty to a single instance of exposing his penis to TR on 14 April 2018. Appellant now argues that when the military judge found Appellant guilty of the 14 April 2018 indecent exposure, this offense was a lesser included offense (LIO) of Specification 3 of Charge I, alleging sexual abuse of a

---

[5] A GIF is an image file that can be either still or animated.

child by causing sexual contact, and therefore "amounted to a multiplicious prosecution."

**B. Law**

The elements of sexual abuse of a child by sexual contact involving the touching of the genitalia are: (1) that Appellant committed a lewd act upon TR, by intentionally causing TR to touch, directly, his penis; (2) that at the time, TR had not attained the age of 16 years; and (3) that Appellant did so with an intent to arouse or gratify his sexual desire. *See Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*), pt. IV, ¶¶ 45b.b.(4)(a), 45b.a.(c), 45b.a.(h)(4).

The elements of sexual abuse of a child involving indecent exposure are: (1) that Appellant committed a lewd act upon TR, by intentionally exposing his penis to TR by any means; (2) that at the time, TR had not attained the age of 16 years; and (3) Appellant did so with an intent to arouse or gratify his own sexual desire. *See* 2016 *MCM*, pt. IV, ¶¶ 45b.b.(4)(c), 45b.a.(c), 45b.a.(h)(4).

In determining whether one offense is an LIO of another offense, the United States Court of Appeals for the Armed Forces (CAAF), in *United States v. Jones*, articulated the "elements test," stating:

> Under the elements test, one compares the elements of each offense. If all of the elements of offense X are also elements of offense Y, then X is an LIO of Y. Offense Y is called the greater offense because it contains all of the elements of offense X along with one or more additional elements.

68 M.J. 465, 470 (C.A.A.F. 2010).

In *United States v. Armstrong*, the CAAF provided additional guidance, stating that a court could apply the elements test in two ways:

> The first way is by comparing the statutory definitions of the two offenses. An offense is a lesser included offense of the charged offense if each of its elements is necessarily also an element of the charged offense. The second way is by examining the specification of the charged offense. An offense can also be a lesser included offense of the charged offense if the specification of the charged offense is drafted in such a manner that it alleges facts that necessarily satisfy all the elements of each offense.

77 M.J. 465, 469–70 (C.A.A.F. 2018) (citations omitted).

"The prohibition against multiplicity is grounded in compliance with the 'constitutional and statutory restrictions against Double Jeopardy.'" *United*

*States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (citing *United States v. Quiroz,* 55 M.J. 334, 337 (C.A.A.F. 2001)).

"An unconditional guilty plea waives a multiplicity issue unless the offenses are facially duplicative, that is, factually the same." *United States v. Pauling*, 60 M.J. 91, 94 (C.A.A.F. 2004) (internal quotation marks and citation omitted). "Whether two offenses are facially duplicative is a question of law that we will review de novo." *Id.* (citing *United States v. Palager*, 56 M.J. 294, 296 (C.A.A.F. 2002)). "Two offenses are not facially duplicative if each 'requires proof of a fact which the other does not.'" *Id.* (quoting *United States v. Hudson*, 59 M.J. 357, 359 (C.A.A.F. 2004)).

An appellant's "express waiver of any waivable motions" as part of a pretrial agreement or plea agreement "extinguishe[s] his right to raise these issues on appeal" unless the waiver is of a fundamental right. *Gladue*, 67 M.J. at 314. An accused "may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution. That includes double jeopardy, the basis of the multiplicity objection." *Id.* (citations omitted). "[A] guilty plea does not foreclose or relinquish consideration of all legal issues, particularly double jeopardy claims, which can be decided on the basis of facts apparent on the face of the record." *United States v. Lloyd*, 46 M.J. 19, 24 (C.A.A.F. 1997) (citations omitted). "Nevertheless, if the factual component of each offense said to be multiplicious is not shown to be the same, appellate review of the legal aspect of such a claim is not required under our guilty plea waiver doctrine." *Id.* (citation omitted).

## C. Analysis

Appellant expressly waived "all waivable motions" as part of his plea agreement—one that appeared to give him significant benefits, especially as it related to the maximum period of confinement he would face. In turn, Appellant waived any legal claims he may have had regarding multiplicity on this appeal, except for a claim that the offenses are facially duplicative. *See Pauling*, 60 M.J. at 94.

Reviewing the standard espoused in *Pauling*, applying the elements test from *Jones*, and reviewing this case de novo, we do not find Appellant's sexual abuse of a child by indecent exposure offense to be an LIO of sexual abuse of a child by intentionally causing contact, nor do we find the offenses facially duplicative. These are two separate offenses that require different elements, notably exposure for the former and actual physical contact for the latter. Physical contact can occur while a person's genitalia are exposed, or in the absence of exposure (such as through the clothing). In this case, moreover, while not an extended period of time, there was a gap of time between when Appellant exposed his penis to TR and when he actually guided TR's hand to his penis.

7

Furthermore, having reviewed Appellant's providence inquiry and the stipulation of fact, Appellant described and admitted to two distinct and separate offenses.

Regarding any other claims of multiplicity or "multiplicious prosecution," these claims are waived. At Appellant's court-martial, the military judge asked trial defense counsel what motions the Defense would have made but for the plea agreement provision. Defense counsel did not say that a multiplicity motion was a motion he considered filing with the trial court. Appellant argues that because "no mention was made of a motion to dismiss on the basis of either multiplicity or even an unreasonable multiplication of charges" to the military judge, that "any such waiver of this issue on the part of Appellant was less than all-knowing."

Nonetheless, before the military judge accepted Appellant's pleas, he conducted an appropriate inquiry with Appellant about the waiver provision in the plea agreement, making sure Appellant understood this provision of his agreement. Appellant's defense counsel also informed the military judge that the Defense originated the waiver provision of the plea agreement. We find that Appellant's waiver was knowing and voluntary. Accordingly, we decline to exercise our authority under Article 66, UCMJ, to pierce Appellant's waiver. *See United States v. Chin*, 75 M.J. 220, 222–23 (C.A.A.F. 2016).

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court