**UNITED STATES, Appellee,**

v.

**Captain Charles R. HARTWIG, 376–60–9747, United States Army, Appellant.**

**ACMR 9102411.**

U.S. Army Court of Military Review.

31 Aug. 1992.

For Appellant: Captain Lawrence W. Andrea, JAGC (argued), Captain Mark L. Toole, JAGC, Captain Alan M. Boyd, JAGC, Captain Robin L. Hall, JAGC (on brief).

For Appellee: Captain Robert J. Walters, JAGC (argued), Colonel Dayton M. Cramer, JAGC, Major Joseph C. Swetnam, JAGC (on brief).

Before De GIULIO, ARKOW, and WALCZAK, Appellate Military Judges.

OPINION OF THE COURT

De GIULIO, Senior Judge:

Appellant was tried by a military judge sitting as a general court-martial. Contrary to his pleas, he was found guilty of conduct unbecoming an officer and a gentleman by maltreating two female soldiers and by mailing a letter containing sexually suggestive, offensive, lewd, indecent, and disgraceful comments to a female under the age of sixteen, in violation of Article 133, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 933 (1982).[1] He was sentenced to dismissal, confinement for six months, and total forfeitures. The convening authority approved the sentence.

Appellant alleges that UCMJ art. 133 is unconstitutionally overbroad and vague as applied to the facts surrounding his letter to Gabrielle, the female under the age of sixteen, and under the circumstances violates his first amendment rights to free speech.[2] He also asserts that the military judge erred by admitting Prosecution Exhibits 4 and 5, photographs of nude women, as examples of the photography of David Hamilton. We disagree and affirm.

As a result of an article in her intermediate school newspaper, Gabrielle sent a letter to Soldiers Without Mail, Operation Desert Shield, APO New York. She wrote the letter on regular notebook paper using a pen. Neither the paper nor the envelope was perfumed. The letter was intended to go to a man or woman soldier, sailor, or marine. The salutation was "Dear Soldier." She wanted the soldiers to feel that they were important and receiving support.

In the letter, she gave her name, the name of her school, and her hobbies. She indicated her hobbies were swimming, biking, and shopping. She also stated that the soldiers' sleeping habits must have gotten messed up with such time differences, that they should feel important, and how much she supported them. She could not recall whether she identified her school as Langston Hughes Intermediate School or Langston Hughes School. At the time of trial, Gabrielle was fourteen years old.

Appellant, a reserve officer called to active duty for Desert Storm, was a shift officer at the rear area operations center for his unit in Southwest Asia. He received and answered Gabrielle's letter. He hand wrote:

3-3-91

Dear Gabriella(sic),

I've read your letter for a while, but because of the fighting ... Thanks for writing. Hope I can write this letter so its not 'boring.' I'm 5'9', brown haired, blue eyed, and single ... (let me know if you'd like to pursue that later [here appellant drew a heart]). I have interests in swimming, dancing, traveling (I lived in Germany before the war), and saunas (the European variety—coed). I also enjoy nature walks (called Volksmarches, in Germany), photography (go check out David Hamilton at your local bookstore to know more about my favorite themes), and reading. I just finished a book I think you'd enjoy.... Butterfly, by Kàthryn Harvey. It reminded me of something you could send me..... Something we're critically short of here....

1. The specification provides, in pertinent part, that appellant:

did ... on or about 3 Mar 91, wrongfully and dishonorably author and mail a letter containing sexually suggestive, offensive, lude(sic), indecent and disgraceful comments to Gabrielle ..., a female he had never met, who was under the age of sixteen years, in response to her "any soldier letter," the said letter being in words and figures as follows: [letter quoted in the text of this opinion] such acts dishonoring, disgracing and compromising his standing as an officer and thereby damaging the standing of the United States Army Officer Corps ... in the public esteem, such acts under the circumstances constituting conduct unbecoming an officer and a gentleman.

2. In his brief appellate does not assert error concerning that part of the specification alleging maltreatment of the two female soldiers. Nevertheless, during oral argument, counsel asserted that these were merely "tag along" allegations and the findings should not be approved because the evidence is legally and factually insufficient to support the findings of guilty. We disagree. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Turner,* 25 M.J. 324 (C.M.A.1987).

fantasies. Feel free to include in your next letter, .if youd(sic) like, your most intimate feelings. I'll write you mine, too, if you'd like. I don't know yet whether I want to go back to Germany after this, or return to the states—I'd miss the freedom of European beaches (topless—(men *and* women)—or nude (my favorite)), parks and swim halls. I am an FKK fan [Here appellant drew a heart]. If you'd like to add something nice to your 'fantasy' letter, you could include a picture of yourself—(it doesn't *have* to be nude, but, of course, that would be nice ...). I'll send you one of me later, if you'd like, (wearing ... whatever you'd like ...). Have you ever been to Europe? Would you like to go someday? (Would you be interested in checking out the beaches?). I await your next perfumed letter. Hope you write soon.

Love,

Charlie

C.P.T. Hartwig
376–60–9747
312th SPT CTR (1AD)
OPERATION DESERT STORM
APO NY 09761"

After receiving and reading the letter, Gabrielle felt ashamed that people like the writer represented our country. She hid the letter in her room because she thought it would make her mother angry. About an hour later, her mother discovered the envelope on the kitchen table, demanded the letter, and read it. Gabrielle was right. It made her mother angry.

Other evidence at trial indicated that *Butterfly* was a book being read by personnel of appellant's unit at about the time appellant wrote the letter to Gabrielle. It was described as a book with sexual overtones. One witness described it as a book with very sexually explicit scenes. The back of the book cover contains the statement that, "Above an exclusive men's store on Rodeo Drive there is a private club called Butterfly, where women are free to act out their secret erotic fantasies." One of the female soldier victims of the maltreatment offense testified that appellant

repeatedly encouraged her to read *Butterfly*. He told another that he had some fantasies he "needed living out." She interpreted his references to fantasies in the context of the book, *Butterfly*.

■ In *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), the Supreme Court of the United States examined UCMJ art. 133. The Court held that Article 133 was not overbroad or void for vagueness. The Court found that an officer could be held to a higher standard than a civilian or enlisted personnel because of the officer's particular position of responsibility and command. *Id.* at 744, 94 S.Ct. at 2556. The Court further held that a military officer's first amendment rights to free speech may be limited because of the different character of the military community and the need to preserve the military's capacity to carry out its mission. *Id.* at 758, 94 S.Ct. at 2563. *See also United States v. Frazier*, 34 M.J. 194, 198 (C.M.A. 1992). The nature of the Article 133 offense is:

> action or behavior in an official capacity which, in dishonoring or disgracing the person as an officer, seriously compromises the officer's character as a gentleman, or action or behavior in an unofficial or private capacity which, in dishonoring or disgracing the officer personally, seriously compromises the person's standing as an officer.

Manual for Courts–Martial, 1984, Part IV, para. 59c(2). "Acts of dishonesty, unfair dealing, indecency, indecorum, lawlessness, injustice, or cruelty exemplify behavior violative of this Article." *United States v. Dallman*, 32 M.J. 624, 628 (A.C.M.R.1991), *rev'd in part*, 34 M.J. 274 (C.M.A.1992). The test is whether an officer's conduct falls below standards established for officers; the conduct need not constitute a violation of other provisions of the code. *United States v. Taylor*, 23 M.J. 314, 318 (C.M.A.1987); *see also United States v. Norvell*, 26 M.J. 477 (C.M.A.1988); *United States v. Giordano*, 35 C.M.R. 135, 140 (C.M.A.1964).

■ In the case *sub judice*, appellant attacks that part of the specification involv-

ing Gabrielle. He contends that the facts in his case are distinguishable from *Parker v. Levy.* He contends that he could not have been aware that his conduct was proscribed. He further contends that the letter was meant to be private correspondence and that he could not have foreseen any potential embarrassment or bad publicity to the Army. He urges that, absent any direct harm to the Army or any palpable demonstration of the letter's outrageous and obscene character or appellant's culpable or dishonorable intentions, the government has failed to establish sufficient interest in punishing appellant in a criminal forum.[3]

We believe that the government's interest is warranted in this case. Appellant's acts took place during Operation Desert Storm, a time when the military services were under particular scrutiny by members of the public. The nature of appellant's letter was not the type that an officer would send to a person he had never met. His letter was in response to a "Soldier Without Mail" letter, a letter written to show public support for Operation Desert Storm. Appellant's contention that he did not commit the offense because he intended the correspondence to be private is not well founded. "That the offense requires the factfinder to make a value judgment concerning the accused's conduct provides no basis for implying that the conduct must somehow be ... public in order to violate Article 133." *United States v. Norvell,* 26 M.J. at 479. As an officer, appellant must accept responsibility for his letter which he sent blindly to a reader. Under the circumstances, this Court concludes that the language of the letter was offensive, vulgar, and intended to incite lust. His conduct falls below the standards established for officers. His conduct falls well within the holding of *Parker v. Levy* which limits an officer's first amendment rights.

■ Appellant also asserts that the military judge erred by admitting into evidence, over defense objection, Prosecution

Exhibits 4 and 5. Prosecution Exhibit 4 is a publication entitled, *"The Best of David Hamilton."* The publication contains photographs of nude and partially nude young females, some of whom appear to be just entering womanhood. Prosecution Exhibit 5 is a 1992 calendar with photographs by David Hamilton which are similar to those in Prosecution Exhibit 4.

At trial, the trial counsel requested that the military judge take judicial notice of Prosection Exhibits 4 and 5. Trial defense counsel objected on the grounds of relevancy. He indicated that there was no showing these were representative of the works of David Hamilton. Trial counsel maintained it was relevant and very probative of the statement in the letter, "Photography—check out David Hamilton at your bookstore." After a recess was called in order to permit trial defense counsel to review the exhibits and to "let both sides figure out their respective positions," trial defense counsel announced that his objection was the same. The military judge admitted the exhibits for the limited purpose of serving as a sample of David Hamilton's work. Appellant now contends that the government failed to establish a foundation for authenticity, failed to show that the photographs were representative of the particular David Hamilton mentioned in appellant's letter, and failed to show that the specific photographs were in any way related to appellant or his letter.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Manual for Courts–Martial, United States, 1984, Mil.R.Evid. 401 [hereinafter Mil.R.Evid.]. Trial defense counsel's concern was the failure to show the exhibits were representative of the works of David Hamilton. From the record, we conclude that the exhibits were the works of the David Hamilton referenced in appellant's letter. Indeed, it appears from the record that trial defense counsel arrived at the same conclusion. He did not question

---

**3.** Appellant also contends that the evidence is insufficient to prove Gabrielle was under the age of sixteen, as alleged in the specification.

Although we disagree with appellant's contention, we do not believe that the age of the recipient of the letter is crucial to the offense.

whether the exhibits were the works of the same David Hamilton. Under the circumstances, we hold that the evidence shows that the photography to which appellant referred in his letter was of the type shown in the exhibits. The weight to be given to the evidence was a matter to be determined by the factfinder. The photographs were relevant. The military judge did not err in admitting these exhibits. Any basis for an objection which was not raised at trial was waived. *See* Mil.R.Evid. 103(a)(1).

The issue personally raised by appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), is without merit.

The findings of guilty and the sentence are affirmed.

· Judge ARKOW and Judge WALCZAK concur.