UNITED STATES, Appellee,

v.

Charles R. HARTWIG, Captain,
U.S. Army, Appellant.

No. 93–0131.

CMR 9102411.

U.S. Court of Military Appeals.

Argued Oct. 6, 1993.

Decided March 23, 1994.

For Appellant: *Captain Lawrence W. Andrea* (argued); *Colonel Malcolm H. Squires, Jr.,* and *Major Robin L. Hall* (on brief); *Colonel Stephen D. Smith,* and *Lieutenant Colonel James H. Weise.*

For Appellee: *Captain Glenn L. Kirschner* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel Richard A. Cefola, Major Joseph C. Swetnam,* and *Captain Robert J. Walters* (on brief); *Lieutenant Colonel Joseph A. Russelburg.*

## Opinion of the Court

GIERKE, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of conduct unbecoming an officer and a gentleman, in violation of Article 133, Uniform Code of Military Justice, 10 USC § 933. The approved sentence provides for dismiss-

al, confinement for 6 months, and total forfeitures. The Court of Military Review affirmed the findings and sentence. 35 MJ 682 (1992).

We granted review of the following issues [1]:

### I

WHETHER THE FIRST AMENDMENT STANDARD OF CLEAR AND PRESENT DANGER APPLIES TO SERVICE-MEMBERS.

### II

WHETHER APPELLANT'S PRIVATE LETTER TO GABRIELLE [P] ENJOYED FIRST AMENDMENT PROTECTION.

### III

WHETHER APPELLANT'S PROSECUTION AND CONVICTION VIOLATED HIS FIRST AMENDMENT RIGHTS ABSENT A SHOWING THAT APPELLANT'S LETTER POSED A CLEAR AND PRESENT DANGER TO THE ARMY'S ABILITY TO EFFECTIVELY ACCOMPLISH ITS MISSION.

### IV

WHETHER ART. 133, UCMJ, IS UNCONSTITUTIONALLY OVERBROAD AND VAGUE AS APPLIED TO THE FACTS OF APPELLANT'S CASE.

### Factual Background

The charges in this case arose from a letter written by appellant to Gabrielle P., a 14–year–old school girl. As part of a school project, the girl sent a handwritten letter on lined notebook paper to Soldiers Without Mail, Operation Desert Shield, APO New York. Her salutation was "Dear Soldier." She listed her school on the return address, but at trial she could not remember if she

---

1. We also granted review of the Appointments Clause issue resolved in favor of the Government in *Weiss v. United States,* —— U.S. ——, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994).

identified her school as an "intermediate" school.

The letter eventually was delivered to appellant, who sent a handwritten response on "Garfield" stationery. Appellant's response included the following:

Thanks for writing. Hope I can write this letter so it's not "boring." I'm 5'9", brown haired, blue eyed, and single ... (let me know if you'd like to pursue that later [Here appellant drew a heart]. I have interests in swimming, dancing, traveling (I lived in Germany before the war), and saunas (the European variety—coed). I also enjoy nature walks (called Volksmarches, in Germany), photography (go check out David Hamilton at your local bookstore to know more about my favorite themes), and reading. I just finished a book I think you'd enjoy.... Butterfly, by Kathryn Harvey. It reminded me of something you could send me. .... Something we're critically short of here .... fantasies. Feel free to include in your next letter if you'd like, your most intimate feelings. I'll write you mine, too, if you'd like. I don't know yet whether I want to go back to Germany after this, or return to the states—I'd miss the freedom of European beaches (topless—(men *and* women)—or nude (my favorite), parks and swim halls. I'm an FKK fan [Here appellant drew a heart]. If you'd like to add something nice to your "fantasy" letter, you could include a picture of yourself—(it doesn't *have* to be nude, but, of course, that would be nice ... ). I'll send you one of me later, if you'd like, (wearing ... whatever you'd like ... ). Have you ever been to Europe? Would you like to go someday? (Would you be interested in checking out the beaches?) I await your next perfumed letter. Hope you write soon.

Love,
Charlie

C.P.T. Hartwig
[SSN]
312th SPT CTR (1AD)
OPERATION DESERT STORM
APO NY 09761

Gabrielle testified that when she received and read the letter, she felt "ashamed." She hid the letter in her room because she feared that it would make her mother angry. Her mother discovered the envelope, demanded the letter, read it, and complained to appellant's commander.

### The "Clear and Present Danger" Standard (Issue I)

Appellant contends that his letter to Gabrielle must be reviewed under the "clear and present danger" standard, which was articulated by the Supreme Court in *Schenck v. United States*, 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470 (1919), as follows: "The question in every case is whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent."

The Supreme Court long ago recognized that "[t]he military constitutes a specialized community governed by a separate discipline from that of the civilian." *Orloff v. Willoughby*, 345 U.S. 83, 94, 73 S.Ct. 534, 541, 97 L.Ed. 842 (1953). Focusing specifically on the First Amendment, the Supreme Court has stated:

While the members of the military are not excluded from the protection granted by the First Amendment, the different character of the military community and of the military mission required a different application of those protections. The fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it....

*Parker v. Levy*, 417 U.S. 733, 758, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974).

In *United States v. Priest*, 21 USCMA 564, 45 CMR 338 (1972), a case involving an enlisted person charged with a violation of Article 134, UCMJ, 10 USC § 934, this Court applied the "clear and present danger" standard, 21 USCMA at 570, 45 CMR at 344, and held that the language in question in that

case was not protected by the First Amendment because its adverse impact on good order and discipline in the armed forces violated Article 134. 21 USCMA at 572, 45 CMR at 346. When Priest collaterally attacked his court-martial conviction and the decision of our Court, the D.C. Circuit recognized that Congress may, consistent with the First Amendment, prohibit speech which "undermine[s] the effectiveness of response" by military personnel "to command." *Priest v. Secretary of Navy,* 570 F.2d 1013, 1017 (1977), *citing Parker v. Levy* and *United States v. Priest,* both *supra.*

In *United States v. Howe,* 17 USCMA 165, 172, 37 CMR 429, 436 (1967), this Court applied the "clear and present danger" standard to a First Amendment attack on both Article 88, UCMJ, 10 USC § 888, which prohibits officers from using contemptuous words against certain officials, and Article 133, prohibiting "unbecoming" conduct by officers. This Court noted, "The evil which Article 88 ... seeks to avoid is the impairment of discipline and the promotion of insubordination by an officer of the military service in using contemptuous words toward the Chief of State and the Commander-in-Chief of the Land and Naval Forces of the United States." 17 USCMA at 173, 37 CMR at 437. The Court examined the evidence and concluded "[t]hat in the present times and circumstances such conduct by an officer constitutes a clear and present danger to discipline within our armed services...." The Court disposed of the constitutional argument by stating, "That Article 88 ... does not violate the First Amendment is clear." 17 USCMA at 174, 37 CMR at 438. Likewise, with respect to Article 133, the Court said, "That Article 133 affronts no constitutional concept has seemingly never been in doubt." 17 USCMA at 176, 37 CMR at 440.

■ ■ Based on the foregoing, we hold that the "clear and present danger" standard applies to speech by military members, but the standard requires a different application in a military context. *Schenck* recognized that speech may be restricted to prevent the "substantive evils that Congress has a right to prevent." 249 U.S. at 52, 39 S.Ct. at 249.

In a military context, those "substantive evils" are violations of the Uniform Code of Military Justice. When an alleged violation of Article 133 is based on an officer's private speech, the test is whether the officer's speech poses a "clear and present danger" that the speech will, "in dishonoring or disgracing the officer personally, seriously compromise[ ] the person's standing as an officer." Para. 59c(2), Part IV, Manual for Courts-Martial, United States, 1984.

### Constitutional Protection for "Private" Letter (Issue II)

■ Appellant asserts that his letter to Gabrielle was private correspondence which is protected by the First Amendment. We hold that the private nature of his letter neither clothes it with First Amendment protection nor excludes it from the ambit of Article 133.

■ Private speech, under certain circumstances, can constitute a violation of Article 133. In *United States v. Guaglione,* 27 MJ 268, 272 (CMA 1988), we stated "that an officer's conduct may be 'unbecoming' ... even though it is" intended to be "private." In *United States v. Norvell,* 26 MJ 477 (CMA 1988), we upheld a conviction under Article 133 for language from an officer to an enlisted woman which described how to avoid detection of marihuana use in urinalysis. We rejected the argument that speech must be "published" before it is punishable under Article 133. We stated, "Conduct which is entirely unsuited to the status of an officer and gentleman often occurs under circumstances where secrecy is intended." 27 MJ at 478. We upheld the conviction on the ground that the enlisted woman hearing the language "would tend to view appellant, and thus the officer corps, with diminished respect." 26 MJ at 480. In *United States v. Moore,* 38 MJ 490 (CMA 1994), we held that degrading and obscene speech by an officer who was extorting sexual acts and money from his listener was not protected, even though the officer intended his speech to be private.

Over a century ago, the Supreme Court upheld the constitutional authority of Congress to prohibit private or unofficial conduct

by an officer which "compromised" the person's standing as an officer "and brought scandal or reproach upon the service." In *Smith v. Whitney,* 116 U.S. 167, 185, 6 S.Ct. 570, 579, 29 L.Ed. 601 (1886), the Supreme Court was asked by a Navy officer to prohibit his trial by court-martial for violation of the predecessor to Article 133 [Article 22, Articles for the Government of the Navy]. The Supreme Court refused to issue a writ of prohibition, "being clearly of opinion that such conduct of a naval officer is a case arising in the naval forces, and, therefore, punishable by court-martial under the articles and regulations made or approved by congress in the exercise of the powers conferred upon it by the constitution. . . ." 116 U.S. at 186, 6 S.Ct. at 580. In reaching its decision, the Supreme Court expressly recognized the authority of courts-martial to try officers for private conduct. The Court observed:

> Under every system of military law for the government of either land or naval forces the jurisdiction of courts-martial extends to the trial and punishment of acts of military or naval officers which tend to bring disgrace and reproach upon the service of which they are members, *whether those acts are done in the performance of military duties, or in a civil position, or in a social relation, or in private business.*

116 U.S. at 183–84, 6 S.Ct. at 578 (emphasis added), *cited in United States v. Howe,* 17 USCMA at 178, 37 CMR at 442.

### *Proof of Clear and Present Danger (Issue III)*

■ Appellant contends that the evidence of record is insufficient to prove that his letter posed a clear and present danger to the Army's ability to effectively accomplish its mission. In order to evaluate appellant's attack on the sufficiency of the evidence, we must first examine the nature of the conduct proscribed by Article 133.

Article 133 provides: "Any commissioned officer, cadet, or midshipman who is convicted of conduct unbecoming an officer and a gentleman shall be punished as a court-martial may direct." Paragraph 59c(2), Part IV,

Manual, *supra,* defines "conduct unbecoming an officer" as "action or behavior in an official capacity which, in dishonoring or disgracing the person as an officer, seriously compromises the officer's character as a gentleman, or action or behavior in an unofficial or private capacity which, in dishonoring or disgracing the officer personally, seriously compromises the person's standing as an officer."

Conduct violative of Article 133 is composed of two prongs. Analyzing the predecessor to Article 133 [Article of War 61], Colonel Winthrop explained:

> To constitute therefore the conduct here denounced, the act which forms the basis of the charge must have a double significance and effect. Though it need not amount to a crime, it must offend so seriously against law, justice, morality or decorum as to expose to disgrace, socially or as a man, the offender, and at the same time must be of such a nature or committed under such circumstances as to bring dishonor or disrepute upon the military profession which he represents.

W. Winthrop, Military Law and Precedents 711–12 (2d ed. 1920 Reprint) (footnote omitted), *cited with approval in United States v. Howe,* 17 USCMA at 177–78, 37 CMR at 441–42.

Appellant challenges the legal sufficiency of the evidence. We therefore must determine "whether, considering the evidence in the light most favorable to the" Government, "a reasonable factfinder could have found all the" elements of the offense "beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979)." *United States v. Turner,* 25 MJ 324 (CMA 1987).

Although appellant emphasized in his brief and oral argument that the letter was politely phrased, its overall message was clearly sexual. He asked Gabrielle to indulge his fantasies by sending him a nude photograph of herself and suggested that he would send her one of himself upon request.

Appellant also made reference to the photography of David Hamilton. The prosecution introduced a collection of photographs entitled, "The Best of David Hamilton," and

a German 1992 calendar entitled *"Romantik Flair,"* both of which consist of photographs of nude and partially nude adolescent girls, taken by David Hamilton. The prosecution also introduced evidence that "Butterfly," which the letter mentions, was a book dealing with female erotic fantasies. There is no evidence that Gabrielle was aware of the nature of David Hamilton's photography or the contents of "Butterfly." Nevertheless, such evidence is relevant to show appellant's intent to send a sexually suggestive message. Gabrielle's testimony establishes that she received appellant's sexual message loud and clear. When asked how she reacted to the letter, Gabrielle testified, "It makes me feel ashamed that people like that are representing our country."

Furthermore, appellant's reference to David Hamilton is an indication that he knew, or at least suspected, that Gabrielle was an adolescent. Appellant's specific reference to a photographer of nude adolescent girls, Gabrielle's use of a school address on her letter, the unsophisticated style and format of her letter, and appellant's response to Gabrielle on "Garfield" stationery all combine to justify the inference urged by the prosecution at his court-martial: that appellant knew Gabrielle was of tender age. *See United States v. Blocker*, 32 MJ 281, 284 (CMA 1991) ("In resolving legal-suffiency questions, this Court is bound to draw every reasonable inference from the evidence of record in favor of the prosecution.").

■ To the extent that appellant argues that the prosecution must prove actual damage to the reputation of the military, we reject his argument. Forbidden speech is measured by "its tendency," not its actual effect. *United States v. Priest*, 21 USCMA at 571, 45 CMR at 345.

The question raised by appellant's assertion is whether the evidence of record supports a finding that appellant's conduct presented a clear and present danger of disgracing or dishonoring appellant personally and thereby bringing "dishonor or disrepute upon the military profession he represents." *Par-*

ker *v. Levy*, 417 U.S. at 754, 94 S.Ct. at 2560; *United States v. Norvell*, 26 MJ at 480. We hold that it does.

### *Reasonable Notice of Criminality (Issue IV)* [2]

■ We turn finally to appellant's contention that he was not on fair notice that his conduct was proscribed. Appellant sent his sexually suggestive letter to a stranger, knowing or strongly suspecting her tender age, and without knowing her age, marital status, life-style, or sensitivies. We are satisfied that any reasonable officer would know that such conduct falls below the "limit of tolerance based on customs of the service and military necessity below which the personal standards of an officer ... cannot fall without seriously compromising ... [his] standing as an officer ... or ... [his] character as a gentleman." Para. 59c(2), Part IV, Manual, *supra*. Any reasonable officer would recognize that sending sexual overtures to a stranger, under the circumstances of this case, would risk bringing disrepute upon himself and his profession. *Parker v. Levy, supra*. *See United States v. Frazier*, 34 MJ 194, 198–99 (CMA 1992) ("[A] reasonable military officer would have no doubt that the activities charged in this case constituted conduct unbecoming an officer.") (footnote omitted). We hold that appellant was on fair notice that sending his sexually-oriented proposal to Gabrielle was proscribed.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges CRAWFORD and WISS concur.

COX, Judge (concurring):

I am uncertain whether the conduct of appellant constituted "clear and present" danger or whether the danger was "cloudy and remote." I am certain it was disgraceful and any officer would be on notice.

Accordingly, I concur with Judge Gierke's opinion. *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547 (1974).

---

**2.** The overbreadth aspect of this issue is without merit. *See Parker v. Levy*, 417 U.S. 733, 757–61,

94 S.Ct. 2547, 2564 (1974).