# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 38968**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Scott A. MEAKIN**
Lieutenant Colonel (O-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 14 July 2017

————————————

*Military Judge:* Joshua Kastenberg (arraignment); Natalie D. Richardson (trial).

*Approved sentence:* Dismissal, confinement for 20 months, and forfeiture of all pay and allowances. Sentence adjudged 28 August 2015 by GCM convened at Davis-Monthan Air Force Base, Arizona.

*For Appellant:* Captain Allen S. Abrams, USAF.

*For Appellee:* Major Jeremy D. Gehman, USAF; Major Tyler B. Musselman, USAF; Gerald R. Bruce, Esquire.

Before MAYBERRY, JOHNSON, and SPERANZA, *Appellate Military Judges*.

Senior Judge MAYBERRY delivered the opinion of the court, in which Senior Judge JOHNSON and Judge SPERANZA joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

MAYBERRY, Senior Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, contrary to his pleas, of two charges and 17 specifications in

violation of Article 133, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 933.[1] The military judge sentenced Appellant to a dismissal, confinement for 20 months, and total forfeiture of all pay and allowances. The convening authority (CA) deferred and later waived the adjudged and automatic forfeitures but approved the remainder of the adjudged sentence.

Appellant asserts six assignments of error but this opinion only addresses four: (1) his convictions are legally and factually insufficient; (2) the military judge abused her discretion when she denied the Defense motion for a continuance to obtain the presentence report in Appellant's federal district court case; (3) the military judge abused her discretion when she denied the Defense motion to dismiss for unreasonable multiplication of charges; and (4) the addendum to the staff judge advocate recommendation (SJAR) failed to accurately advise the CA about post-trial confinement conditions purportedly violating the Eighth Amendment, Article 12, UCMJ, 10 U.S.C. § 812, and Article 55, UCMJ, 10 U.S.C. § 855, alleged in his clemency submission.[2] We find there was no error prejudicial to Appellant as to the first three assignments of error, but we do find that the addendum to the SJAR was defective and we, therefore, remand the case for new post-trial processing.

## I. BACKGROUND

Investigation by the Department of Homeland Security and the Air Force Office of Special Investigations (AFOSI) revealed Appellant engaged in online conversations, image sharing, and electronic mail (email) correspondence with a Canadian law enforcement officer in a chat room on a pornographic website. Further investigation revealed Appellant had engaged in similar online conversations with a number of others. The content of the conversations involved extremely graphic descriptions of sexual abuse and degradation of children. On many occasions, Appellant asked for photographs of the alleged abuse. Appellant admitted to engaging in various online chats.

In September of 2014, Appellant was indicted for knowing access of child pornography in United States District Court for the District of Arizona (fed-

---

[1] Appellant was acquitted of one specification of a violation of Article 133, UCMJ.

[2] In light of our determination that the addendum to the staff judge advocate recommendation was deficient, we need not address Appellant's allegation that he is entitled to sentence relief as a result of his conditions of confinement to include being confined with foreign nationals, and his allegation that he is entitled to sentence relief as a result of post-trial delay.

eral district court).[3] On 23 December 2014, the Charge and its 17 specifications were preferred. On 13 February 2015, Appellant pleaded guilty and was convicted of knowing access of child pornography in federal district court, and he was placed on conditional release pending sentencing in federal district court. On 25 March 2015, Appellant's Article 32, UCMJ, hearing was held, during which time the Government requested the preliminary hearing officer consider an additional charge with a single specification of conduct unbecoming an officer. On 13 April 2015, the Additional Charge and Specification were preferred. On 1 May 2015, both charges and all 18 specifications were referred to trial by general court-martial.

On 22 June 2015, Appellant was arraigned at Davis-Monthan Air Force Base (AFB), Arizona. On 28 August 2015, contrary to his pleas, a military judge convicted Appellant of both charges and 17 of the 18 specifications, with some language excepted, in violation of Article 133, UCMJ. The military judge sentenced Appellant to a dismissal, confinement for 20 months, and forfeiture of all pay and allowances. Pursuant to Article 57, UCMJ, 10 U.S.C. § 857, Appellant began serving his sentence of confinement that same day. On 11 September 2015, Appellant requested deferment and waiver of the automatic forfeitures for the benefit of his wife and son. On 25 September 2015, the CA deferred the adjudged and automatic forfeitures, withholding final decision on the waiver request until action.

On 14 October 2015, Appellant arrived at the Naval Consolidated Brig in Charleston, South Carolina (Charleston Brig). On 27 October 2015, Appellant filed a motion with the federal district court to revoke the conditions of his release pending sentencing in that court. Despite opposition from the Assistant United States Attorney (AUSA), the federal magistrate judge granted Appellant's motion on 4 November 2015. Three weeks later, on 25 November, a Writ of Habeas Corpus *ad Prosequendum* was issued, ordering Appellant to be returned to the jurisdiction of the federal district court. The Charleston Brig facility received a request for a temporary transfer of Appellant from the local U.S. Marshal's office. The request was coordinated with and approved by Air Force Corrections.

On 4 December 2015, Charleston Brig turned Appellant over to the U.S. Marshals.[4] Between 4 December 2015 and 18 December 2015, Appellant was

---

[3] The evidence supporting this crime was discovered during the investigation giving rise to the charges before this court.

[4] At this time, the SJAR had been served on Appellant and his counsel but final action had not been taken.

confined in at least four different confinement facilities as the U.S. Marshals transported him across the country in accordance with the federal order. On 18 December 2015, Appellant arrived at the Central Arizona Detention Facility (CADF) in Florence, Arizona, and he remained in this facility until his sentencing hearing in May of 2016.[5] On 8 January 2016, the CA approved only the confinement and dismissal. The CA waived the mandatory forfeitures for a period of six months or release from confinement, whichever was sooner, with the waiver commencing on the date of action.

On 19 May 2016, Appellant was sentenced in federal district court to 24 months of confinement, to run concurrently with his military sentence of confinement. Appellant received confinement credit starting on 28 August 2015, and remained at CADF until 10 June 2016. Appellant was subsequently returned to Charleston Brig on 5 July 2016, and he remained there until he was released on 28 December 2016, having served his military sentence. He was transported from Charleston Brig to the federal confinement facilities in Arizona, again by the U.S. Marshals, in order to serve out the remainder of his federal sentence.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

Appellant avers that his convictions should be set aside because the evidence is both legally and factually insufficient.

This court reviews issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001); *see also United States v. McGinty*, 38 M.J. 131, 132 (C.M.A. 1993).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of [Appellant]'s guilt beyond a reasonable

---

[5] The record is devoid of any documentation regarding the scheduling of this sentencing hearing.

doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. The term reasonable doubt, however, does not mean that the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

As charged, the elements of Article 133, UCMJ, are:

(1) That the accused wrongfully and dishonorably communicated, in writing, certain indecent language; and

(2) That, under the circumstances, these acts constituted conduct unbecoming an officer and gentleman.

The parties agreed that the military judge should use the following definition of indecency:

> "Indecent" language is that which is grossly offensive to modesty, decency, or propriety, or shocks the moral sense, because of its vulgar, filthy, or disgusting nature, or its tendency to incite lustful thought. Language is indecent if it tends reasonably to corrupt morals or incite libidinous thoughts. The language must violate community standards.

*Manual for Courts-Martial, United States* (*MCM*), pt. IV, ¶ 89.

Article 133 prohibits conduct by a commissioned officer that is:

> action or behavior in an unofficial or private capacity which, in dishonoring or disgracing the officer personally, seriously compromises the person's standing as an officer. There are certain moral attributes common to the ideal officer and the perfect gentleman, a lack of which is indicated by acts of . . . indecency, indecorum . . . or cruelty.

*MCM*, pt. IV, ¶ 59(c)(2).

There is no requirement that the conduct underlying an alleged violation of Article 133, UCMJ, be criminal on its own. *United States v. Norvell*, 26 M.J. 477, 481 (C.M.A. 1988). The underlying act may be constitutionally protected in civilian society but not necessarily so for military members, and therefore be criminal under Article 133, UCMJ. *United States v. Forney*, 67 M.J. 271, 275 (C.A.A.F. 2009). Purely private speech can serve as the basis for a charge under Article 133. *United States v. Hartwig*, 39 M.J. 125, 128

(C.M.A. 1994). Additionally, private conduct may constitute an offense under Article 133, UCMJ. *United States v. Moore*, 38 M.J. 490, 493 (C.M.A. 1994).

In *Moore*, our superior court held that indecent speech is "synonymous with 'obscene' and . . . not afforded constitutional protection" when alleged as a violation of Article 133, UCMJ. *Id*. at 492. That same year, in *Hartwig*, our superior court held, "When an alleged violation of Article 133 is based on an officer's private speech, the test is whether the officer's speech poses a 'clear and present danger' that the speech will, 'in dishonoring or disgracing the officer personally, seriously compromise[ ] the person's standing as an officer.'" *Hartwig*, 39 M.J. at 128. Appellant asserts that his speech was private, anonymous, and "evidently consensual." He characterizes his online chats as fantasies that he would not act on—"dirty talk." Appellant asserts that there was no evidence that any interlocutor[6] was not an adult, and there was no evidence that anyone other than the interlocutor was present during the conversations. Consequently, Appellant asserts that a tension exists between *Moore* and *Hartwig* and this court should apply the heightened standard set forth in *Hartwig*.

In *Stanley v. Georgia*, 394 U.S. 557, 568 (1969), the Supreme Court found a limited right to possess obscene materials in the privacy of one's own home. In discussing the Constitution's protection of the right to receive information and ideas, the Court famously noted:

> Whatever may be the justifications for other statutes regulating obscenity, we do not think they reach into the privacy of one's own home. If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch. Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds.

*Id*. at 565.

Since issuing this opinion, however, the Supreme Court has made clear that its holding in *Stanley* is a narrow one. *See United States v. Reidel*, 402 U.S. 351, 357 (1971). In particular, with regard to Appellant's case, the Court has held the zone of privacy *Stanley* protected does not extend beyond the home. Federal statutes dealing with obscenity are construed to incorporate

---

[6] Each specification uses this term and associates it with a user name from the online chats. Only one user was identified, the Canadian law enforcement officer.

the standards in *Miller v. California*, 413 U.S. 15 (1973). *Ashcroft v. A.C.L.U.,* 535 U.S. 564, 581 (2002). Since establishing an obscenity standard, the Supreme Court has consistently held that obscene speech, that is, sexually explicit speech that violates the fundamental notions of decency, is not protected by the Constitution. *See United States v. Williams*, 553 U.S. 285, 288 (2008). *Stanley* emphasized the freedom of thought and mind in the privacy of the home; *Stanley* did not create a right to receive, transport, or distribute obscene material. *See United States v. Thirty-Seven (37) Photographs*, 402 U.S. 363, 376 (1971). Finally, we note that there is no distinction as to the medium of the expression when dealing with obscene material. Obscenity can manifest itself "in conduct . . . or in the written and oral description of conduct." *Kaplan v. California*, 413 U.S. 115, 119 (1973).

Here, Appellant chose to express his obscene "fantasies" via the medium of online chats and emails, and analogizes that activity to private conversations within his home which he asserts is protected free speech. Under *Moore*, such speech is not afforded constitutional protection. *See United States v. Bowersox*, 72 M.J. 71, 80 (C.A.A.F. 2013) (communicating obscene material not entitled to the protection afforded by *Stanley* as the activity is beyond mere possession); *United States v. Gill*, 40 M.J. 835, 837 (A.F.C.M.R. 1994) (speech communicated in private between consenting adults is not protected by the First Amendment because it was indecent on its face and prejudicial to good order and discipline); *United States v. Maxwell,* 42 M.J. 568, 580 (A.F. Ct. Crim. App. 1995), *rev'd on other grounds,* 45 M.J. 406 (C.A.A.F. 1996) (indecent language communicated by consensual email messages that the appellant believed would be private does not lessen the discrediting nature of the conduct).

The tension between *Moore* and *Hartwig* relied upon by Appellant has no bearing on the issue before us. Here, the court must determine whether Appellant's online chats and emails were sufficient to constitute conduct unbecoming an officer. The content of Appellant's online discussions were clearly indecent. The charged conduct need not actually damage the reputation of the military, instead it only has to have a tendency to do so. *See Parker v. Levy*, 417 U.S. 733, 754 (1974); *United States v. Anderson*, 60 M.J. 548, 554 (A.F. Ct. Crim. App. 2004). Although Appellant's identity as a military member was revealed in the course of the criminal investigation, he did not have to outwardly identify himself as a member of the military for his actions to constitute conduct unbecoming an officer. Appellant's conduct was disgraceful to himself and the reputation of the military.

## B. Denial of Motion for Continuance

On 20 July 2015, trial defense counsel filed a motion for a continuance of the court-martial docketed for 25–28 August 2015, due to the fact Appellant's

sentencing hearing in federal district court was scheduled to take place on 26 August 2015. The Government's response to the motion, filed on 22 July 2015, indicated the federal sentencing hearing had twice been continued at the request of Appellant. The current date had been established on 9 June 2015, and the AUSA handling the case had agreed to request the August date be continued, but it was too early to do so. On 29 July 2015, the Government filed a supplemental response, attaching a copy of the request by the AUSA to continue the 26 August hearing. The pleading filed by the AUSA included a statement that the federal pre-sentence investigation report guideline (PIRG) would not be completed in time for the currently scheduled date in part because the probation officer had not yet received the psychosexual evaluation. On 31 July 2015, the Government submitted a second supplemental filing indicating that the federal sentencing hearing had been continued until 14 September 2015.

On 21 August 2015, trial defense counsel again filed a motion for a continuance, based in part on Rule for Courts-Martial (R.C.M.) 703(f)(2), asserting the trial counsel had not provided a copy of the PIRG, which he candidly acknowledged was not complete as of the time of the request. Trial defense counsel asserted that the sentence recommendation contained within the pre-sentencing report was evidence in mitigation, regardless of the content of the recommendation. The Government's response, filed the same day, asserted that R.C.M. 703(f)(2) was inapplicable since the evidence Appellant sought did not now, or previously, exist. The Government further argued that until the report was completed, no determination could be made as to whether or not it contained discoverable information.

On 22 August 2015, the military judge continued the case for one day for other reasons. On 25 August, the military judge denied the request for a continuance as to the "non-disclosure of the pre-sentencing report" stating:

> R.C.M. 706(a)(6)(C) requires the trial counsel to disclose to the defense the *existence* of evidence known to trial counsel to negate or reduce the degree of guilty, or reduce the punishment.
>
> . . . .
>
> The Rules for Courts-Martial do not require the government to provide the defense a document which is anticipated to be in existence at some future point. As the presentence report is not in existence, trial counsel cannot disclose it to the defense. Moreover, trial counsel does not and cannot know whether it contains anything favorable to the defense.

The PIRG was prepared on 19 April 2016, with the addendum completed on 5 May 2016.

We review a military judge's decision to deny a motion for a continuance for an abuse of discretion. *United States v. Weisbeck*, 50 M.J. 461, 464 (C.A.A.F. 1999). An abuse of discretion "requires more than just [a court's] disagreement with the military judge's decision." *United States v. Bess*, 75 M.J. 70, 73 (C.A.A.F. 2016). An abuse of discretion occurs only when the military judge's findings of facts are clearly erroneous, when her decision is influenced by an erroneous view of the law, or when her decision is "outside the range of choices reasonably arising from the applicable facts and the law." *United States v. Miller*, 66 M.J. 306, 307 (C.A.A.F. 2008).

In determining whether a military judge abused her discretion in granting a continuance, appellate courts consider the following factors:

> surprise, nature of any evidence involved, timeliness of the request, substitute testimony or evidence, availability of witness or evidence requested, length of continuance, prejudice to opponent, moving party received prior continuances, good faith of moving party, use of reasonable diligence by moving party, possible impact on verdict, and prior notice.

*United States v. Wiest*, 59 M.J. 276, 279 (C.A.A.F. 2004) (quoting *United States v. Miller*, 47 M.J. 352, 358 (C.A.A.F. 1997)).

Trial courts must be accorded "broad discretion" in granting or denying continuances. *Morris v. Slappy*, 461 U.S. 1, 11 (1983); *United States v. Wellington*, 58 M.J. 420, 425 (C.A.A.F. 2003). A military judge's erroneous decision to deny a defense continuance is reviewed for prejudicial error. *Wellington*, 58 M.J. at 424.

Appellant now asserts that the military judge's denial prejudiced him by limiting the mitigation evidence he could have introduced at trial, thereby denying him the opportunity to challenge his court-martial on the basis of the Fifth Amendment's prohibition against Double Jeopardy.[7]

Appellant was court-martialed for communicating indecent language, in writing, online. His federal district court conviction was for knowing access of 92 images of child pornography. Not having access to an unfinished PIRG imposed no limitation on raising a motion to dismiss for violation of the Fifth Amendment. The true limiting factor in raising such a motion was the fact that Appellant had not yet been sentenced for any criminal offense. Furthermore, the content of the PIRG would not have assisted Appellant, even if he had made such a motion insomuch as it contains language that contradicts

---

[7] U.S. CONST. amend. V.

his claim: "On 28 August, 2015, the defendant was court martialed in military court for conduct similar to the instant offense which was not encompassed by the indictment."

Appellant's second continuance, filed four days before his court-martial was to begin, essentially requested an indefinite delay based on evidence which did not exist at the time of the request. As of that date, his federal sentencing hearing had been delayed twice, and in fact Appellant was not sentenced in federal district court for another nine months—a total of 15 months after he entered his guilty plea. Appellant could only speculate as to the content of the report. Although Appellant possessed the PIRG prior to filing his assignments of error, he does not specifically identify any mitigation evidence contained therein that he would have offered at his court-martial.

From the time he entered his guilty plea in federal district court, Appellant was aware that a PIRG would be compiled. Appellant was represented by counsel throughout both the federal proceeding and his court-martial proceeding. While the PIRG does indicate that Appellant was interviewed by the probation officer preparing the report, it does not say when that interview occurred. Additionally, one reason the report was not complete at the time of Appellant's court-martial was the fact that the probation officer was awaiting the result of the psychosexual evaluation. The PIRG refers to two distinct evaluations, neither of which is explicitly referred to as a psychosexual evaluation. The first, a psychiatric evaluation, occurred on 13 January 2015 but there is no further information as to when the results of that evaluation were made available to the probation office. The second evaluation, a sex offender specific evaluation, is cited as "prepared on 16 July 2015." Yet, it is not clear as to when that evaluation occurred, or when it was provided to the probation office.[8]

Appellant's trial defense counsel was aware of Appellant's September 2014 federal indictment at the time court-martial charges were preferred. Eight months elapsed between preferral of charges and the court-martial. Six months elapsed between Appellant's guilty plea in federal district court on 13 February 2015 and his court-martial. Additionally, Appellant personally sought treatment for sex addiction in February of 2014 at The Meadows, a

---

[8] It is reasonable to conclude that the second evaluation noted in the PIRG is the psychosexual evaluation based on the transcript of Appellant's allocution in federal district court on 13 February 2015, whereby the federal magistrate indicates he will sign the order granting the psychosexual evaluation.

facility in Wickenburg, Arizona, shortly after his interview by AFOSI and the Canadian law enforcement office. In April 2014, after being released from The Meadows treatment facility, Appellant began treatment with a licensed psychotherapist. Appellant's trial defense counsel had ample opportunity to obtain mitigation evidence from the providers involved in these treatment programs. The licensed psychotherapist did submit a letter in support of Appellant's court-martial clemency package and, presumably, she could have provided similar evidence at trial.

Appellant asserts he was prejudiced at the time of his court-martial by not having potential mitigation information contained within the presentencing report. We again note that at the time of the court-martial there was no report, so the military judge had no articulable content as to what that mitigation evidence might be. Appellant did not provide the military judge with any information pertaining to his treatment efforts at the motion hearing, nor at the sentencing phase of the trial. The PIRG includes information related to Appellant's stay at The Meadows, at least some of which was provided by Appellant. It states:

> Meakin stated the treatment dealt with his addiction to sex. A psychiatric discharge summary from The Meadows indicates the defendant was admitted into the Gentle Path program on February 10, 2014, with impulse control disorder, sexual compulsivity, and anxiety disorder. . . when he was discharged, the defendant was diagnosed with impulse control disorder, sexual compulsive behavior, PTSD, and narcissistic and antisocial personality traits. The summary indicates the counselors felt the defendant needed to continuing [sic] working on his sexual addiction.

Appellant's trial defense counsel presented a solid sentencing case, including Appellant's combat service. Counsel knew, or should have known, about the available evidence regarding his psychological diagnoses. Their knowledge as to Appellant's psychological state at the time of trial significantly weakens their argument that Appellant was prejudiced by not having speculative potential mitigation evidence. The evidence contained within the PIRG is no more mitigating than that from Appellant's earlier treatment.

Having reviewed the evidence provided to the military judge at the time Appellant filed his motion for continuance, we find the military judge did not abuse her discretion in denying the motion. With the knowledge of the evidence that was available but not provided, we are not compelled to reach a different conclusion. Appellant was not prejudiced by not having the federal presentencing report at the time of his court-martial.

### C. Unreasonable Multiplication of Charges

Claims of unreasonable multiplication of charges are reviewed for abuse of discretion. *United States v. Campbell*, 71 M.J. 19, 22 (C.A.A.F. 2012).

In a claim regarding error in a military judge's ruling on a motion for unreasonable multiplication of charges, an appellant must show that the findings of fact upon which a military judge predicated the ruling were not supported by the evidence in the record, that incorrect legal principles were used by the military judge, or that the military judge's application of correct legal principles to the facts of the case was clearly unreasonable. *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

"Even where charges are not multiplicious, 'the prohibition against unreasonable multiplication of charges has long provided courts-martial and reviewing authorities with a traditional legal standard—reasonableness—to address the consequences of an abuse of prosecutorial discretion in the context of the unique aspects of the military justice system.'" *United States v. Anderson*, 68 M.J. 378, 385–86 (C.A.A.F. 2010) (quoting *United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001)).

We consider the following non-exhaustive factors in determining whether unreasonable multiplication of charges has occurred:

> (1) Did the [appellant] object at trial that there was an unreasonable multiplication of charges and/or specifications?; (2) Is each charge and specification aimed at distinctly separate criminal acts?; (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?; (4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?; (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*Quiroz*, 55 M.J. at 338 (citation and internal quotation marks omitted).

Appellant alleges the military judge abused her discretion in denying Defense counsel's motion because her findings of fact were not supported by the evidence in the record and because her application of the law to the facts of the case was clearly unreasonable.

Appellant moved to dismiss Specifications 2 through 17 of the Charge and the Additional Charge and its Specification for findings or, in the alternative, for sentencing based on the unreasonable multiplication of charges. Appellant did object at trial, satisfying the first *Quiroz* factor. On the other hand, Appellant does not allege there was any evidence of prosecutorial overreach-

ing, resolving the fifth *Quiroz* factor. The heart of Appellant's argument involves the second, third, and fourth *Quiroz* factors.

All parties agreed the maximum term of confinement for each specification was six months. So, with regard to the fourth *Quiroz* factor, the punitive exposure increases from six months to 102 months. Each specification involved an online conversation with a distinct screen name. While the dates of the specifications overlap, the charged timeframe runs from 16 May 2013 to 30 January 2014, some eight and a half months. Six specifications involve only a single date; one involves two days; and the longest timeframe covers the entire eight and one half months. There was more than one forum where the communications took place—"motherless.com" and "yahoo chat."

At the motion hearing, and again on appeal, Appellant asserts that the communications were a continuous course of conduct involving the same subject matter. Appellant further argues that the Government had only identified the name of one individual who received the communications, the Canadian law enforcement officer. The military judge denied the motion, finding that "each charge and specification is aimed at a distinctly separate criminal act. . . . I see no evidence of them being related to each other except in kind of MO [modus operandi]." The military judge found that the number of charges and specifications did not misrepresent or exaggerate Appellant's criminality or unreasonably increase his punitive exposure. The military judge found no evidence of prosecutorial overreaching or abuse. The military judge considered the motion again for sentencing and denied the motion, stating:

> I'm looking at the *Quiroz* factors again. My analysis has not changed and now I have got the benefit of seeing all the evidence and it is even clearer to me that these are separate and distinct acts that may have had the same theme running through them and may have been accomplished using similar means, but they're different conversations with different interlocutors, starting and stopping at different times.

The facts associated with the online conversations charged in the 17 specifications, which Appellant was convicted of, were separate and distinct acts. While there are overlapping dates involved in these conversations, Appellant's actions were not a continuing course of conduct. The military judge's findings of fact are supported by the evidence, and she applied the appropriate law. Appellant is not entitled to relief on this issue.

**D. Addendum to the SJAR**

A brief chronology of the post-trial events is useful for resolution of this issue. The record of trial was served on trial defense counsel on 4 November 2015. Appellant received his copy on 25 November 2015. The SJAR was

signed on 18 November 2015, and received by trial defense counsel on 19 November. Appellant received his copy on 30 November. On 7 December, trial defense counsel requested an extension to submit clemency due to the federal *ad Prosequndum* order and the fact Appellant was currently being held in the North Charleston County Detention Facility. On 18 December, trial defense counsel again requested an extension, stating the last known location of Appellant was Georgia, and asserting that Appellant had communicated he was being housed with foreign nationals.

Appellant submitted clemency matters on 30 December 2015. Defense counsel asserted Appellant's post-trial confinement violated the Eighth Amendment to the United States Constitution,[9] as well as Articles 12 and 55, UCMJ. These allegations will be addressed separately. Here, our focus is the language of the SJAR addendum, dated 7 January 2016, stating "the defense does not allege legal error" and that the earlier recommendation to approve the sentence except for forfeitures was unchanged. On 8 January 2016, the CA approved the adjudged sentence except for the forfeitures. The addendum to the SJAR was served on trial defense counsel on 12 January 2016.

This court reviews allegations of improper completion of post-trial processing de novo. *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000).

The staff judge advocate (SJA) did not acknowledge Appellant's allegation of error and opine that the allegation had no merit as so often occurs; instead, the SJA erroneously asserted that Appellant had raised *no* legal error. For relief, Appellant asks that his dismissal be set aside. Alternatively, Appellant asks for this court to set aside the action and remand for new and speedy post-trial processing.

The Government offers the following "likely explanation" for the "no legal error" language in the addendum:

> [T]he SJA did not consider allegations of post-trial confinement conditions, which came to existence after the conclusion of Appellant's court-martial, a legal error affecting the findings and sentence. In other words, Appellant's post-trial confinement had no role in the military judge's findings or her sentence. Instead, he more likely viewed the allegations under the realm of clemency.

---

[9] U.S. CONST. amend. VIII.

We are not persuaded by this rationalization. More germane is the declaration from the Chief of Military Justice at the time Appellant's clemency submission was pending, Captain (Capt) AS.

Capt AS indicates the AUSA prosecuting Appellant made statements to the legal office "that [Appellant] was being transported to a facility in Florence, Arizona, to receive pretrial confinement credit for his pending civilian criminal trial; his placement in the Charleston County Detention Center[10] was part of that transport," and that it was not until Appellant's trial defense counsel submitted their second extension request, 11 days later, for more time to submit his clemency that "they had any knowledge that Appellant was being housed with foreign nationals." Capt AS further states, "[W]e had no reason to believe housing with foreign nationals would continue knowing that transport to another facility was imminent." Appellant's clemency package, submitted some two weeks later, corroborated that he had in fact arrived at the Florence facility on the date the second extension was requested.

This declaration is troubling for three reasons. First, it provides evidence that the legal office at Davis-Monthan AFB was aware that Appellant was going to be moved from military confinement. Similarly, the Government, which is responsible for ensuring Article 12, UCMJ, is complied with, was aware that a military prisoner was going to be moved to another facility.[11] Finally, and most troubling, is the fact that the Government was aware of the allegation involving Appellant being housed with foreign nationals *prior* to the submission of Appellant's clemency, and in addition to not raising it in the addendum to the SJAR, took absolutely no action with regards to the substance of the allegation—because the legal office had "no reason to believe it would continue." The fact that an alleged violation of Article 12, UCMJ, may not continue does not relieve the Government from inquiring into the conditions under which Appellant, a military prisoner, may have already been housed with foreign nationals and accurately informing the CA as to the legal implications of this situation. Here, the Article 12, UCMJ, violations did in fact continue, as will be discussed.

When legal error is raised by an appellant during clemency, the SJAR "shall state whether, in the staff judge advocate's opinion, corrective action on the findings or sentence should be taken." R.C.M. 1106(d)(4). Errors in the

---

[10] This was the known location of Appellant at the time trial defense counsel filed the first request for an extension of time to submit clemency.

[11] Additional information regarding knowledge by other Government officials will be addressed *infra*.

SJAR are subject to appropriate corrective action by appellate authorities except when trial defense counsel fails to comment on matters in the SJAR. R.C.M. 1106(d)(6), 1106(f)(6). The Government asserts that Appellant did not object to the error, thereby asking us to apply the plain error standard from *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005). We are not persuaded by this argument in light of the fact that the error here was not in the SJAR but the addendum, and the CA took action on the case *before* the defense counsel was aware of the content of the addendum. We also find the holding in *United States v Catrett*, 55 M.J. 400 (C.A.A.F. 2001), to be distinguishable in that here, the SJAR Addendum erroneously stated that Appellant did not raise legal error.

The SJA is required to respond to allegations of legal error, and failure to do so, in most instances, "will be prejudicial and will require remand of the record to the [CA] for preparation of a suitable recommendation." *United States v. Hill*, 27 M.J. 293, 296 (C.M.A. 1988). An error in the SJAR, however, "does not result in an automatic return by the appellate court of the case to the [CA]." *United States v. Green*, 44 M.J. 93, 95 (C.A.A.F. 1996). This court may "determine if the accused has been prejudiced by testing whether the alleged error has any merit and would have led to a favorable recommendation by the SJA or corrective action by the [CA]." *Id.*

In failing to even note the alleged legal error, the language of the addendum was erroneous. Further, as we address below, the allegation had merit: we find an Article 12 violation for which the Government could have, and should have, taken corrective action. As such, we are compelled to remand the case to the CA for new post-trial processing.

### E. Article 12—Confinement with Foreign Nationals

Appellant alleges he was intermittently housed with foreign nationals in multiple non-military confinement facilities from 4–18 December 2015, and confined with 10 to 12 individuals, who appeared to be foreign nationals in confinement for illegal entry into the United States through the border with Mexico, at the federal confinement facility beginning on 18 December 2015.

We review de novo the question of whether an appellant's post-trial confinement violates Article 12, UCMJ. *United States v. McPherson*, 73 M.J. 393, 395 (C.A.A.F. 2014); *United States v. Wise*, 64 M.J. 468, 473–74 (C.A.A.F. 2007). Article 12, UCMJ, states: "No member of the armed forces may be placed in confinement in immediate association with enemy prisoners or other foreign nationals not members of the armed forces." "Immediate association" has been interpreted to mean that military members can be confined in the same jail or brig as a foreign national, but military members must be segregated in different cells. *Wise*, 64 M.J. at 475. Article 12, UCMJ, applies to

military members confined in civilian state or federal facilities in the United States. *McPherson*, 73 M.J. at 394.

Typically, absent unusual or egregious circumstances, an appellant must exhaust administrative remedies before we will grant relief for a violation of Article 12. *Id.*; *see also United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997). This requirement promotes the "resolution of grievances at the lowest possible level with prompt amelioration of the complaint while the prisoner suffers the condition," and assists in developing an "adequate record to aid appellate review." *McPherson*, 73 M.J. at 397 (quoting *Wise*, 64 M.J. at 471); *see also United States v. White*, No. ACM 33583, 1999 CCA LEXIS 220, at *4, (A.F. Ct. Crim. App. 23 Jul. 1999), *aff'd*, 54 M.J. 469, 475 (C.A.A.F. 2001). To meet this requirement, an appellant must show that absent some unusual or egregious circumstance, he has exhausted the prisoner-grievance system in his confinement facility and petitioned for relief under Article 138, UCMJ, 10 U.S.C. § 938. *McPherson*, 73 M.J. at 397 ; *Wise*, 64 M.J. at 471; *United States v. White*, 54 M.J. 469, 472 (C.A.A.F. 2001).

Capt AS states in her declaration that at least as early as mid-December 2015, and possibly earlier, the Davis-Monthan AFB legal office was aware of Appellant's movement to CADF in Florence, Arizona, and was aware that his placement in the North Charleston Detention Facility was part of that transport. In mid-December 2015, as part of their request for additional time to submit clemency matters, defense counsel informed the legal office that Appellant believed he was being housed with foreign nationals. As a result, Article 12, UCMJ, is not truly being raised for the first time on appeal.

Appellant maintains he is entitled to confinement credit for his time in confinement with foreign nationals following his military court-martial while awaiting his federal sentencing hearing. As discussed above, Appellant's federal defense counsel filed a motion to revoke the conditions of his release for the purpose of getting confinement credit. A federal magistrate judge granted Appellant's motion and signed a Writ of Habeas Corpus *ad Prosequendum*. The U.S. Marshal's office in Charleston notified the military officials at Charleston Naval Brig of the writ and requested a temporary transfer of Appellant. The Charleston Brig staffed the request with Air Force Corrections and received authorization to assist with the temporary transfer. Appellant was turned over to the U.S. Marshals on 4 December 2015, with an unknown date of return. Charleston Brig personnel did not dictate to Appellant or the gaining facility what regulations he would be required to follow. Appellant spent the next 14 days in various non-military detention centers in South Carolina, Georgia, Oklahoma and Arizona. On 18 December 2015, Appellant arrived at CADF in Florence, Arizona, where he remained until 10 June 2016. En route back to Charleston Brig, Appellant spent approximately 25

days in multiple nonmilitary confinement facilities, returning to military control on 5 July 2016, seven months after he departed. Appellant does not assert he had any foreign national cellmates on his return trip to Charleston Brig.

We first address Appellant's time in the various nonmilitary confinement facilities from 4 December 2015 through 18 December 2015. In his clemency submission, he asserted he was housed with foreign nationals from 4–9 December, was transported (in military uniform) with two foreign nationals from South Carolina to Ocilla, Georgia on 9 December, and was transported (again in uniform) on 11 December with inmates who indicated "their organizations employed military members with criminal records to fly from Southern Mexico to the U.S. border." The declaration from the North Charleston Detention Center confirms that they house foreign nationals, and depending on their classification in relation to Appellant, he could have had direct interaction with them. The Affidavit from the Joint Prisoner and Alien Transportation System (JPATS) accounts for Appellant's movement from 11 through 18 December 2015 and while it lists the facilities where he was housed during that time, no further information as to the conditions of his confinement are included. We consider Appellant's assertions for the period 4 through 14 December 2015 to be unrebutted.

In an affidavit attached to his pleading, Appellant asserts that upon arrival at CADF he was placed in a cell with 13 foreign nationals serving time for illegal entry into the United States. The declarations provided by the facility in South Carolina and CADF confirm that foreign nationals were housed in those facilities. Although there is no evidence Appellant filed formal grievances about Article 12, UCMJ, violations at any of the nonmilitary facilities before he arrived at CADF, the record contains evidence that Appellant did notify his military defense counsel of the situation while en route to CADF and that his counsel notified the legal office. Appellant's declaration asserts that within a few days after his arrival at CADF, he informed someone at that facility of his military status and the prohibition against being housed with foreign nationals and received a response of "they would see what he could do." Appellant declares that he remained in the 13-man cell until mid-March at which time he was placed in a two-man cell, but again with a foreign national cellmate; between March and June of 2016, he had approximately five to six cellmates and only two of them were U.S. citizens. The CADF declaration indicates their records show Appellant was moved to a two-man cell in mid-January, and was moved on three more occasions, each time to a two-man cell, before his departure on 10 June 2016.

We find the facts surrounding Appellant's movement from 4–18 December 2015 to constitute unusual circumstances and provide good cause for his fail-

ure to exhaust administrative remedies during this time. He did not necessarily know where he was, how long he would be there, and where he was going next. Despite the understandable need to ensure operational security at these facilities, there was little Appellant could do to remedy the situation.

Article 12 is a federal statute. Appellant was a military prisoner, receiving credit for a military sentence to confinement throughout this time period. The actions, or inactions, by the Air Force and the Department of Defense correctional personnel in not informing the U.S. Marshal's Service of the prohibition against housing Appellant with foreign nationals cannot be ignored. Additionally, the evidence demonstrates that Appellant conveyed the information about his conditions to his military defense counsel, as best he could under the circumstances, and counsel in turn conveyed that information to the legal office on or about 15 December 2015. When this information was received, it was not acted on because the legal office knew he would be transferred from the identified facility (the first of five as we know now) and "had no reason to believe it would continue." It is not reasonable to reach such a conclusion without any investigation; and the record shows the legal office did not engage in any investigation. Rather, Capt AS's declaration asserts that on the date the delay request was filed, Appellant had already reached Arizona. This is based on information the legal office knows now, not information known at the time they learned of Appellant's being housed with foreign nationals.

Appellant's failure to exhaust administrative remedies and seek redress for the period of time from 18 December 2015 through 10 June 2016, when Appellant had settled into CADF, had the ability to confer with counsel, and did not file either a grievance with the facility or an Article 138, UCMJ, 10 U.S.C. § 938, complaint, is persuasive on the other hand.[12] The record is devoid of any action taken by Appellant concerning any alleged Article 12 violations between Appellant's clemency submission filed on 30 December 2015, and his pleadings in this case filed on 22 November 2016. Accordingly, we do not find unusual or egregious circumstances justifying his failure to exhaust administrative remedies for the period of time he was confined at CADF.

We defer determining what relief, if any, would be appropriate for the Article 12 violation until new post-trial processing has been completed, but in taking new action, the convening authority shall be advised of and consider this violation.

---

[12] Appellant did file one grievance during his time at CDAF, on 8 June 2016, regarding his television.

### III. CONCLUSION

The convening authority's action, dated 8 January 2016, is **SET ASIDE**. The record of trial is returned to The Judge Advocate General for remand to the convening authority for new post-trial processing consistent with this opinion. Article 66(e), UCMJ, 10 U.S.C. § 866(e). Thereafter, the record of trial will be returned to this court for completion of appellate review under Article 66, UCMJ, 10 U.S.C. § 866.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court